# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| HISENSE VISUAL TECHNOLOGY CO., LTD., | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 2:25-cv-1091 |
| NOKIA OF AMERICA CORPORATION AND NOKIA CORPORATION, | § § § | JURY TRIAL DEMANDED |
| Defendants. | § § § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Hisense Visual Technology Co. Ltd. ("Hisense" or "Plaintiff") files this Complaint for Patent Infringement against Defendants Nokia of America Corporation and Nokia Corporation (collectively, "Nokia" or "Defendants"), and alleges as follows:

## INTRODUCTION

1.     This is an action for infringement of Hisense's United States Patent No. 10,116,602 ("the '602 patent"), United States Patent No. 10,547,570 ("the '570 patent"), United States Patent No. 10,382,371 ("the '371 patent"), United States Patent No. 10,044,649 ("the '649 patent"), United States Patent No. 10,601,744 ("the '744 patent"), United States Patent No. 8,848,885 ("the '885 patent"), and United States Patent No. 10,121,516 ("the '516 patent") (collectively, the "Asserted Patents").

2.     Nokia has infringed the Asserted Patents by manufacturing, using, offering for sale, and selling in the United States products, systems, and services, including (1) Nokia MX Industrial Edge (MXIE); (2) Nokia Industrial Device Management (IDM); (3) Nokia DAC Manager; (4) Nokia Team Comms, and all reasonably similar products from its industrial edge platform

(collectively, the "Accused Products"). Nokia also has infringed the Asserted Patents by inducing, contributing to infringement, marketing, and promoting the Accused Products that have been purchased and used by Nokia's customers in the United States.

## PARTIES

3.      Plaintiff Hisense is a corporation organized and existing under the laws of the People's Republic of China, having a place of business at 218 Qianwangang Road, Qingdao Economic & Technological Development Zone, Qingdao, Shandong Province, 266555, P.R. China.

4.      Upon information and belief, defendant Nokia of America Corporation is a Delaware corporation with a place of business at 2525 Highway 121, Lewisville, Texas, 75056-5006, which is within this District.    *See* https://www.nokia.com/contact-us/worldwide-offices/north-america/.  Upon information and belief, Nokia of America Corporation also has a place of business in Dallas, Texas, within the State of Texas.  Nokia of America Corporation is registered to do business in the state of Texas and may be served through its registered agent Prentice Hall Corporation System at 211 E. 7th Street, Suite 620, Austin, Texas, 78701-3218, USA.

5.      Upon information and belief, defendant Nokia Corporation is a foreign corporation organized and existing under the laws of Finland, with a principal place of business at Karakaari 7, FIN-02610, Espoo, Finland.  Upon information and belief, Nokia Corporation is an indirect parent corporation of Nokia of America Corporation, which is an indirect subsidiary of Nokia Corporation.  Upon information and belief, Nokia Corporation conducts business within the United States, including within Texas, and by and through Nokia of America Corporation.

6.      Nokia of America Corporation and Nokia Corporation hold themselves out as a single "Nokia" company, exemplified in the company's website, www.nokia.com.  Nokia markets,

advertises, promotes, offers for sale, and sells the Accused Products on the company's website, including to customers and others in the State of Texas and this District.

7.      By registering to conduct business in Texas and by maintaining facilities in at least the city of Lewisville, Nokia has a regular and established place of business within this District.

## JURISDICTION AND VENUE

8.      Hisense realleges, and incorporates in full herein, each preceding paragraph.

9.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100, *et. seq.*  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.     This Court has personal jurisdiction over Nokia pursuant to due process and the Texas Long Arm Statute because (i) Nokia has done and continues to do business in Texas and (ii) Nokia has, directly itself and through intermediaries, distributors, agents, its subsidiaries, or others, committed and continues to commit acts of patent infringement in this District, the state of Texas, and elsewhere in the United States, including making, using, offering to sell, or selling Accused Products, or inducing others to infringe, in this District, the state of Texas, and elsewhere in the United States.  Nokia has placed, and is continuing to place, infringing products into the stream of commerce, and has induced infringement, in this District, the state of Texas, and elsewhere in the United States.

11.     On information and belief, Nokia operates the website https://www.nokia.com including https://www.nokia.com/contact-us/worldwide-offices/north-america/.    This website states that Nokia has a presence in North America, including an office at 2525 Highway 121, Lewisville, Texas, 75056-5006, which is within this District.



12.     On information and belief, Nokia designs, manufactures, markets, offers for sale, and sells the Accused Products to be used by and sold to customers in the United States (including in Texas and this District).  On information and belief, Nokia, directly and through subsidiaries or intermediaries, has purposefully and voluntarily placed its Accused Products into the stream of commerce with the expectation that those products will be purchased and used by customers or consumers in this District.  On information and belief, Nokia customers in Texas and this District have purchased and used the Accused Products.  Nokia has committed acts of infringement within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Nokia would not offend traditional notions of fair play and substantial justice.

13.     Accordingly, Nokia is subject to the personal jurisdiction of this Court, due to, among other things, Nokia's purposeful, continuous, and systematic contacts with Texas and with this District and its acts of infringement within this District.

14.     Venue is proper over Nokia of America Corporation in this District pursuant to at least 28 U.S.C. § 1400(b) because Nokia of America Corporation has committed acts of infringement in this District and has a regular and established place of business in this District.

15.     Venue is proper over Nokia Corporation in this District pursuant to at least 28 U.S.C. § 1391(c).  Nokia Corporation is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

## HISENSE'S PATENTS-IN-SUIT

16.     Hisense realleges, and incorporates in full herein, each preceding paragraph.

17.     Hisense is a leading global consumer electronics and appliances manufacturer. Hisense began in 1969 as a manufacturer of radios in Qingdao, China.  Ten years later, Hisense was manufacturing televisions.  Since then, Hisense has grown to become one of the leading, most trusted consumer electronics and appliance brands in the world.

18.     Hisense has long had a presence and business in North America, where Hisense established a production base in 2015.  That same year, Hisense also acquired Sharp TV's North and South American business.   In 2018 Hisense acquired Toshiba to accelerate its global expansion.  In 2019, Hisense celebrated its 50th anniversary.  Hisense's products and innovations have long been recognized in the electronics industry, such as by CES.

19.     Hisense has long been an innovative company that invests in research and development, develops technology, and creates inventions, including intellectual property. Hisense is the owner and assignee of over 43,000 patents worldwide, including over 1,000 patents in the United States.  Hisense also expends billions of dollars in research and development.

20.     Hisense's intellectual property includes the Asserted Patents, which Nokia has known and been aware of no later than October 13, 2025, before this lawsuit was filed.

21.     Nokia is not licensed to the Asserted Patents, nor are any of the Accused Products licensed under the Asserted Patents.

## NOKIA'S ACCUSED PRODUCTS

22.     Hisense realleges, and incorporates in full herein, each preceding paragraph.

23.    Hisense alleges that at least the following Nokia products, systems, and services of its industrial edge platform and suite infringe one or more of the Asserted Patents: MX Industrial Edge (MXIE), IDM, DAC Manager, and Team Comms.  These Accused Products include parts of Nokia's Industry 4.0 stack and may work independently or in concert with each other or other systems and products.  MXIE runs industrial apps on the local site,[1] DAC Manager operates the private 4G/5G network,[2] IDM onboards and manages devices and software,[3] and apps like Team Comms[4] add communications on top of that foundation.  These products are described in more detail below.

24.    MX Industrial Edge (MXIE): MXIE is an on-premises industrial edge computing platform that hosts and orchestrates apps close to machines for low-latency control, data sovereignty, and secure OT integration with private wireless networks; it is the runtime for Nokia's Industrial Application Catalog apps and partner solutions at the site edge.[5]  Various aspects of MXIE are described in, among others, the webpages (including text, videos, images, data accessible through weblinks therein, and/or any other information provided thereon) accessible through the weblinks below:

    a.    https://www.dac.nokia.com/mx-industrial-edge/ (showing, among other things, MXIE on prem OT edge overview, how it runs Industrial Application Catalog apps, and high level architecture/benefits)

---

[1] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.

[2] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

[3] https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

[4] See, e.g., https://www.dac.nokia.com/applications/nokia-dac-team-comms/.

[5] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.



b.    https://www.dac.nokia.com/connectivity-solutions/private-wireless/it-integration/ (showing, among other things, IT/OT integration concepts, connectors/adapters, Purdue model context, and how MXIE nodes integrate with enterprise IP)



c.    https://www.dac.nokia.com/applications/ (showing, among other things, the Industrial Application Catalog landing page with deployable apps and categories that run on MXIE)

d.    https://www.dac.nokia.com/applications/nokia-integrated-operations-center/ (showing, among other things, the IOC application page with an integration broker/rule engine and dashboards that unify devices, apps, and systems on MXIE)





e.    https://www.youtube.com/watch?v=dQXEYDnmpak (showing, among

other things, a video overview of MXIE's role from data to decision in

Industry 4.0)

f.  https://www.youtube.com/watch?v=iNf_1wYqArA (showing, among other things, mission critical edge computing concepts and MXIE's industrial use cases)

g.  https://www.youtube.com/watch?v=ux4XiighjOc (showing, among other things, MXIE running ecosystem apps such as mixed reality workflows)

h.  https://www.youtube.com/playlist?list=PLK9R1GVjLPy-8BaVJX0YGKLZeFsfUearJ (showing, among other things, an Industrial Edge playlist that illustrates architecture and deployments)

i.  https://www.nokia.com/asset/212765/ (describing, among other things, a high-level One Platform for Industrial Digitalization brochure that situates MXIE within Nokia's private wireless and industrial edge stack)





j.      https://www.nokia.com/private-networks/digital-automation-for-industrial-campus/mxie-on-premises-ot-edge-explained/ (showing, among other things, an explanation of the MXIE on-premises operational technology (OT) edge platform and its benefits in Nokia's private wireless and industrial edge ecosystem)

k.      https://tcca.info/nokia-extends-range-of-industrial-device-solutions-for-private-wireless-networks/ (showing, among other things, Nokia's Industrial Device solutions including MXIE deployments in private wireless networks)

l.      https://www.dac.nokia.com/mission-critical-industrial-edge-faq/ (showing, among other things, frequently asked questions addressing MXIE's

mission-critical industrial edge capabilities in Nokia's private wireless

ecosystem)

m.    https://www.dac.nokia.com/applications/visual-position-and-object-detection/ (showing, among other things, applications leveraging MXIE

for advanced visual positioning and object detection in industrial

scenarios)

n.    https://youtu.be/b5m5x4r_vkk (showing, among other things, a video of

MXIE's industrial edge applications and operational overview)

o.    https://www.nokia.com/industries/public-safety/emergency-communications-services/cctv-networking-and-scene-analytics-solution/

(showing, among other things, MXIE's role in public safety with CCTV

networking and scene analytics solutions)

p.    https://www.dac.nokia.com/industry/industrial-ai/ (showing, among other

things, Industrial AI applications deployed on MXIE within Nokia's

private wireless and industrial edge framework)

q.    https://web-assets.nokia.com/haip_v2/security-safety.html (showing,

among other things, Nokia's approach to security and safety in industrial

edge and private wireless deployments including MXIE)

r.    https://www.dac.nokia.com/connectivity-solutions/private-wireless/core-network/ (showing, among other things, core network integration and

connectivity solutions linked to MXIE deployments in Nokia's private

wireless and industrial edge framework)

25.    Industrial Device Management (IDM): IDM is Nokia's centralized device management for private wireless and edge estates, used to onboard heterogeneous devices, view inventory/health, enforce policies/compliance, and deploy or update applications and configurations to devices or groups through a single console.[6]  Various aspects of IDM are described in, among others, the webpages (including text, videos, images, data accessible through weblinks therein, and/or any other information provided thereon) accessible through the weblinks below:

    a.    https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/ (showing, among other things, IDM features for onboarding, inventory/health, policy/compliance, and software/app deployment)



    b.    https://www.dac.nokia.com/industrial-devices/ (showing, among other things, Nokia industrial devices portfolio integrated with IDM for secure fleet management)

---

[6] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.





c.      https://www.youtube.com/playlist?list=PLgKNvl454BxdneTiNaI04pYa0XQB-_byI (showing, among other things, a private wireless playlist including an IDM "5 key takeaways" explainer)

d.      https://www.youtube.com/watch?v=aeGNkuZu8bE (showing, among other things, device connectivity and how IDM helps connect people and machines)

e.    https://www.youtube.com/watch?v=6hLgFddpGck (showing, among other things, device onboarding and policy enforcement flows for private 5G/LTE)

f.    https://www.nokia.com/asset/212765/ (showing, among other things, Nokia's private wireless and industrial edge stack view that includes device onboarding, lifecycle, and policy themes aligned with IDM)

g.    https://www.dac.nokia.com/industrial-devices/device-software/ (showing, among other things, device software management and orchestration capabilities integral to IDM within Nokia's private wireless and industrial edge solutions)

h.    https://www.dac.nokia.com/applications/ (showing, among other things, the Industrial Application Catalog hosted on IDM as part of Nokia's private wireless edge platform)

i.    https://www.dac.nokia.com/portfolio/?f%5B0%5D=product_type%3Aapplication (showing, among other things, filtered views of applications and industrial use cases managed via IDM in Nokia's private wireless and industrial edge environment and Nokia's Industrial device management for smart devices page)

26.    DAC Manager: DAC Manager is the web console (OSS) for Nokia Digital Automation Cloud that provisions and operates private 4G/5G networks across sites, subscribers/SIMs, and policies, and also provides access to the Industrial Application Catalog for MXIE deployments as part of a "single-pane" campus view.[7]  Various aspects of DAC Manager

---

[7] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

are described in, among others, the webpages (including text, videos, images, data accessible through weblinks therein, and/or any other information provided thereon) accessible through the weblinks below:

a.    https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ (showing, among other things, the DAC Manager web console for site operations, subscribers/SIMs, policies, troubleshooting, and OSS APIs)





b.    https://www.dac.nokia.com/connectivity-solutions/private-wireless/

(showing, among other things, the DAC private wireless solution

overview with service components and operational model)





c.    https://www.youtube.com/watch?v=dzQg_FSWeIs (showing, among other

things, a plug-and-play installation video using DAC Manager during

setup)

d.    https://www.youtube.com/watch?v=Y3Jg6ievwHI (showing, among other

things, a DAC platform video walking through manager login, network

status, SIM activation, QoS, and app catalog)

e.      https://www.nokia.com/asset/212765/ (showing, among other things,
end-to-end architecture diagrams that position DAC/DAC Manager as the
private wireless control plane supporting edge apps and managed devices)

f.      https://www.dac.nokia.com/connectivity-solutions/nokia-dac-wi-fi/
(showing, among other things, integration of Wi-Fi management within
DAC Manager's private wireless site operations in Nokia's edge and
connectivity stack)

g.      https://www.dac.nokia.com/ (showing, among other things, the landing
page for Nokia Digital Automation Cloud (DAC) encompassing DAC
Manager as the key management console within Nokia's private wireless
and industrial edge architecture)

h.      https://www.hannovermesse.de/apollo/hannover_messe_2021/obs/Binary/
A1086077/Nokia_DAC_brochure_EN_2021March.pdf (showing, among
other things, architecture diagrams of DAC/DAC Manager with sites,
subscribers, and services)



27.     Team Comms: Team Comms is a 3GPP-aligned push-to-talk/video/messaging application with a web admin portal that is click-to-deploy from the Industrial Application Catalog and runs on MXIE so data stays on-prem while delivering secure campus communications over private wireless.[8]  Various aspects of Team Comms are described in, among others, the webpages (including text, videos, images, data accessible through weblinks therein, and/or any other information provided thereon) accessible through the weblinks below:

    a.     https://www.dac.nokia.com/applications/nokia-dac-team-comms/

            (showing, among other things, the Team Comms app overview, push-to-x

            features, on-prem MXIE deployment, admin/dispatcher console, and

            highlights)

_____

[8] See, e.g., https://www.dac.nokia.com/applications/nokia-dac-team-comms/.



b.      https://www.nokia.com/blog/boost-your-campus-communications-with-nokia-team-comms/ (showing, among other things, product positioning, use cases, and capability highlights for Team Comms)

c.      https://www.youtube.com/watch?v=TjO6xNQ7aEM (showing, among other things, a feature video with dispatcher console, LMR interoperability, full-duplex calls, and iPhone support)

d.      https://www.youtube.com/watch?v=n_B3moQaSQE (showing, among other things, connected-worker use cases and how Team Comms operates on private wireless)

e.      https://www.dac.nokia.com/applications/ (showing, among other things, the catalog context where Team Comms is one of the deployable apps on MXIE)

f.  https://www.nokia.com/asset/212765/ (showing, among other things, the applications layer context where Team Comms appears as a catalog app delivered over private wireless and executed on the industrial edge)

g.  https://www.youtube.com/watch?v=TjO6xNQ7aEM& (showing, among other things, a video featuring Team Comms capabilities for private wireless campus communications)

h.  https://www.nokia.com/blog/enhance-worker-safety-and-productivity-at-the-touch-of-a-button/ (showing, among other things, use cases and benefits of Team Comms in enhancing worker safety and productivity over Nokia's private wireless network)

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 10,116,602

28.  Hisense realleges, and incorporates in full herein, each preceding paragraph.

29.  U.S. Patent No. 10,116,602, titled "System and methods for device to device control," was duly and legally issued by the United States Patent and Trademark Office on October 30, 2018.  A copy of the '602 patent is attached hereto as Exhibit A.

30.  Hisense is the assignee of all right, title, and interest in the '602 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '602 patent.  Accordingly, Hisense possesses the exclusive right and has standing to prosecute the present action for Nokia's infringement of the '602 patent.

31.  The invention of the '602 patent provides an innovative technology in which an application executing on a device identifies a second device, determines one or more capabilities of the second device, performs capability matching using an application profile, and controls an operation based on one or more matched capabilities, with messages exchanged using communication protocols established by the application.

32.     As the '602 patent explains, the system represents device capabilities using identifiers and associated resources and interfaces (e.g., "capability_uid," "capability_name," "state_fields," "capability_api_uri," "capability_cards_uri," and "capability_callbacks"), enabling the application to obtain capabilities of the second device, perform capability matching, and then exchange messages over the appropriate protocol to control operations of the second device as identified by the application.

33.     The '602 patent provides a solution and improvement over the prior art whereby devices with different capabilities and protocols can be identified and their capabilities can be determined and compared to the application profile, so that the application can control the second device based on one or more matched capabilities, instead of relying on device-specific integrations or manual configurations for each protocol and feature set.

34.     The invention of the '602 patent further provides that capability data and interfaces are structured so the application can select and invoke device functions (e.g., "CAP_CONTROL_STATE" with "state_fields" such as "brightness" and "power_on_off") via defined URIs and callbacks, allowing the application to perform capability matching and then control operations of the second device using the communication protocol identified for the matched capability.

35.     Without a license or permission from Hisense, Nokia has infringed and is continuing to infringe of the '602 patent, directly and indirectly, by importing, making, using, offering for sale, or selling the Accused Products, as well as advertising, marketing, promoting, and supporting those products and inducing or contributing to infringement by its customers, in violation of 35 U.S.C. § 271.

36.    One or more of the Accused Products meets each element of at least claim 11 of the '602 patent, either literally or under the doctrine of equivalents.  For example, MXIE meets each element and infringes:

    a.    Claim 11 recites a device comprising: a controller configured to execute an application configured to provide the device connection and interoperability with at least one other device associated with the application.  MXIE describes an on premises OT edge platform that runs industrial applications via a click to deploy catalog to connect all OT layers, systems and cloud.[9]  MXIE thus satisfies this claim element at least because MXIE's application runtime and catalog are expressly marketed to integrate OT systems and enable cross system/device connectivity.

    b.    Claim 11 recites a controller configured to establish a connection with a second device, wherein the second device is identified to the device by the application.  Nokia's TCCA release states that Device Management, running on MX Industrial Edge, simplifies the introduction of new devices and operation processes on a customer's network, confirming that MXIE is used to onboard and connect industrial endpoints.[10]  MXIE thus satisfies this claim element because MXIE hosted services (including device management) provision and connect specific industrial devices that an application targets over private wireless and other supported networks.

---

[9] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/ and https://www.nokia.com/private-networks/digital-automation-for-industrial-campus/mxie-on-premises-ot-edge-explained/.

[10] See, e.g., https://tcca.info/nokia-extends-range-of-industrial-device-solutions-for-private-wireless-networks/.

c.  Claim 11 recites a controller configured to determine one or more capabilities of the second device based on a capability matching of the application, wherein determining is based on an application profile for the second device and capabilities output by the second device.  Nokia's Integrated Operations Center (IOC) page explains that IOC (which runs with and coordinates MXIE applications) provides an Agile integration layer, integration microservices, and a powerful rule engine, and is leveraged as a unified platform for orchestration and automation of different Nokia MX Industrial Edge (MXIE) applications.[11]  MXIE thus satisfies this claim element at least because IOC's integration microservices collect and normalize device attributes for MXIE applications to align device capabilities to application logic and rules for capability matching.

d.  Claim 11 recites a controller configured to control an operation based on one or more matched capabilities, wherein a command is exchanged relative to the device and second device by way of communication protocols established by the application.  The IOC page details automation via a rule engine that automates contextual action workflows, and describes modular packages (Integration Broker and Enterprise Application) for orchestrating apps and industrial connectors on MXIE, which together enable application level control actions over integrated protocols.[12]  MXIE thus satisfies this claim element at least because MXIE

---

[11] See, e.g., https://www.dac.nokia.com/applications/nokia-integrated-operations-center/.

[12] See, e.g., https://www.dac.nokia.com/applications/nokia-integrated-operations-center/.

with IOC issues application driven actions to connected devices using integrated industrial interfaces after capability based rule evaluation.

37.    Thus, MXIE meets and infringes at least claim 11 of the '602 patent.

38.    In another example, another product, IDM, meets each element of claim 11 and infringes the claim.  For example:

a.    Claim 11 recites a device comprising: a controller configured to execute an application configured to provide the device connection and interoperability with at least one other device associated with the application.  IDM describes centralized device onboarding and management for heterogeneous industrial endpoints, which operates as an application/service layer enabling connectivity and cross device operations.[13]  IDM's fleet management and application/profile mechanisms constitute executing an application that provides connection and interoperability among devices as recited.

b.    Claim 11 recites a controller configured to establish a connection with a second device, wherein the second device is identified to the device by the application.  IDM describes discovery, enrollment/onboarding, and remote administration of industrial devices, where managed devices are identified in the management plane and connected for policy, software, and operations.[14]  IDM thus satisfies this claim element at least because IDM's enrollment/connection workflows pair specific devices under management for subsequent communications and control.

---

[13] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

[14] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

c.      Claim 11 recites a controller configured to determine one or more capabilities of the second device based on a capability matching of the application, wherein determining is based on an application profile for the second device and capabilities output by the second device.  IDM describes device inventory/attributes, OS/app state, compliance posture, and policy/profile assignment that reflect and depend on device reported properties, enabling the manager to align app/profile settings to device type/role and reported status.[15]  IDM thus satisfies this claim element at least because IDM reads device characteristics and state, then applies matching profiles/policies to enable appropriate functions per device capabilities.

d.      Claim 11 recites a controller configured to control an operation based on one or more matched capabilities, wherein a command is exchanged relative to the device and second device by way of communication protocols established by the application.  IDM describes pushing installs/updates, enforcing policies, executing actions, and remotely managing configuration/compliance across devices via supported management protocols.[16]  IDM thus satisfies this claim element at least because IDM issues management commands over its control channels to devices whose capabilities/profiles match the required operations.

39.      Thus, IDM meets and infringes at least claim 11 of the '602 patent.

---

[15] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/ and https://www.dac.nokia.com/industrial-devices/device-software/.

[16] See, e.g., https://www.dac.nokia.com/industrial-devices/device-software/ and https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

40.     In yet another example, another product, DAC Manager, meets each element of claim 11 and infringes the claim.  For example:

a.     Claim 11 recites a device comprising: a controller configured to execute an application configured to provide the device connection and interoperability with at least one other device associated with the application.  DAC Manager describes a centralized, web-based management application that operates the DAC environment and "access[es] our application catalog and deploy[s] industrial applications directly onto the MX Industrial Edge," enabling multi-device/site operations.[17]  DAC Manager thus satisfies this claim element at least because DAC Manager executes the management application layer that provides device connection and interoperability across sites and devices in the DAC/MXIE ecosystem.

b.     Claim 11 recites a controller configured to establish a connection with a second device, wherein the second device is identified to the device by the application.  DAC Manager describes subscriber provisioning, SIM/device onboarding, and site-scoped inventory and operations that maintain managed connections to identified endpoints.[18]  DAC Manager thus satisfies this claim element at least because DAC Manager establishes and maintains management/control connections to specific devices identified

---

[17] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

[18] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/nokia-dac-wi-fi/.

within the application's inventory for configuration and operations over

private wireless/Wi Fi.

c.    Claim 11 recites a controller configured to determine one or more

capabilities of the second device based on a capability matching of the

application, wherein determining is based on an application profile for the

second device and capabilities output by the second device.  DAC

Manager describes device/site views exposing KPIs, alarms, health/state,

and configuration, and aligns application/service deployments by

site/group policy for appropriate enablement.[19]  DAC Manager thus

satisfies this claim element at least because DAC Manager uses device

reported telemetry/state (capabilities output) together with

application/service profiles and policies to match and enable functions

appropriate to each device.

d.    Claim 11 recites a controller configured to control an operation based on

one or more matched capabilities, wherein a command is exchanged

relative to the device and second device by way of communication

protocols established by the application.  DAC Manager describes pushing

configurations/services, subscriber provisioning, and mixed private

wireless/Wi Fi operations that issue control actions to target

devices/groups over system configured communications.[20]  DAC Manager

thus satisfies this claim element at least because DAC Manager sends

---

[19] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/ and
https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/.

[20] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and
https://www.dac.nokia.com/connectivity-solutions/nokia-dac-wi-fi/.

management/control commands over established cellular/Wi Fi control

paths after capability/profile alignment, thereby controlling device

operations via application defined protocols.

41.    Thus, DAC Manager meets and infringes at least claim 11 of the '602 patent.

42.    Nokia without authority of Hisense or any license to the '602 patent makes, uses, offers to sell, or sells the Accused Products within the United States or imports the Accused Products into the United States.  This includes Nokia's manufacture and sale of MXIE that infringes at least claim 11 of the '602 patent.  Nokia therefore directly infringes the '602 patent under 35 U.S.C. § 271(a).

43.    Nokia enables and induces its customers in the United States to infringe one or more claims of the '602 patent by, for example, providing documentation, support services, and marketing materials to its United States customers which direct its customers to directly infringe one or more claims of the '602 patent.  *See*, *e.g.*, "Nokia Accused Products" section, *supra*, citing Nokia documents and information available to customers and the public about the design and features of its products; https://www.dac.nokia.com/mx-industrial-edge/ (MX Industrial Edge webpage); https://www.dac.nokia.com/customer-hub/ (Customer Hub webpage, which includes "contact us" link  to "[g]et in touch with a Nokia expert").

44.    Nokia aids, instructs, supports, markets, and otherwise acts with specific intent to cause an end user located in the United States (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '602 patent.  Further, Nokia designs and manufactures the Accused Products with the specific intent for United States customers (including in Texas and this District) to use the Accused Products in a manner that

infringes one or more claims of the '602 patent.  Nokia has had knowledge of the '602 patent at least since October 13, 2025.

45.    Nokia sells and offers for sale the Accused Products in the United States with the knowledge and intent that its customers will use those products, including to infringe the '602 patent.  By selling and offering for sale the Accused Products in the United States, Nokia induces infringement of the '602 patent by at least its customers, which directly infringe the '602 patent when using the Accused Products in the United States.

46.    Nokia is liable for induced infringement of the '602 Patent under 35 U.S.C. § 271(b) by intentionally taking action that has actually induced and continues to induce direct infringement of one or more claims of the '602 patent by others (such as its customers and consumers) using the Accused Products in this District, the state of Texas, and elsewhere in the United States.

47.    Nokia is liable for contributory infringement of the '602 patent under 35 U.S.C. § 271(c).  Nokia sells and offers to sell within the United States components of the Accused Products that constitute material parts of the inventions claimed in the '602 patent.  Nokia knows that these components are especially made or especially adapted for use in infringement of the '602 patent, and that they are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Accordingly, Nokia's supply of these components to customers in the U.S. contributes to direct infringement of the '602 patent by those customers, making Nokia liable under § 271(c).

48.    Hisense has complied with 35 U.S.C. § 287 and may recover pre-suit damages for Nokia's infringement of the '602 patent.

49.     Nokia's infringement of the '602 patent has caused and continues to cause damages and irreparable harm to Hisense, which has invested significantly in developing its products and services, and protecting its intellectual property including the '602 patent.

50.     Nokia's infringement of the '602 patent has been willful at least since the filing of the complaint.

<u>**COUNT II: INFRINGEMENT OF U.S. PATENT NO. 10,547,570**</u>

51.     Hisense realleges, and incorporates in full herein, each preceding paragraph.

52.     U.S. Patent No. 10,547,570, titled "System and methods for card element application operation," was duly and legally issued by the United States Patent and Trademark Office on January 28, 2020.  A copy of the '570 patent is attached hereto as Exhibit B.

53.     Hisense is the assignee of all right, title, and interest in the '570 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '570 patent.  Accordingly, Hisense possesses the exclusive right and has standing to prosecute the present action for Nokia's infringement of the '570 patent.

54.     The invention of the '570 patent relates to technology for presenting and operating an application with a user interface based on a platform configured for operation with card elements.

55.     As the '570 patent explains, one embodiment includes detecting a command for a user interface of the device, where the command is associated with a card element displayed by the user interface, the user interface and card element are displayed by the device, and the operation of device for presenting the user interface is based on a platform for operation with card elements. It further includes determining at least one operation of the device based on the command and the platform, where determining includes interoperation of the user interface with the platform and controlling operation of the device based on said determining.  The patent explains commands can

include selection of a card element to access content associated with it or exchanging the card element for content or capabilities relative to the device.

56.     The '570 patent provides a solution and improvement over the prior art whereby conventional systems are limited by device and configuration incompatibilities, and lack of interoperability. The invention provides a common application platform for operation on the device and across a system for multiple device types. The platform includes a discovery and pairing engine, a capability and matching engine, a dynamic capacity engine, and a profiling engine. Determining includes accessing entity information for one or more entities, capability information for the card element, and card metadata. Controlling includes managing the exchange of card elements relative to the device and an entity of the application, and updating metadata for a card element. This architecture addresses conventional limitations by enabling flexible, automated management and interaction of card elements and devices across heterogeneous systems.

57.     The invention of the '570 patent further provides that the user interface is associated with an application configured to operate across multiple devices on the platform, and the platform updates a card profile for the card element by updating card metadata stored by the platform to recognize assignment of the card element to a selected other device.

58.     Without a license or permission from Hisense, Nokia has infringed and is continuing to infringe of the '570 patent, directly and indirectly, by importing, making, using, offering for sale, or selling the Accused Products, as well as by advertising, marketing, promoting, and supporting those products and inducing or contributing to infringement by its customers, in violation of 35 U.S.C. § 271.

59.    One or more of the Accused Products meets each element of at least claim 11 of the '570 patent, either literally or under the doctrine of equivalents.  For example, MXIE meets each element and infringes:

a.    Claim 11 recites a device comprising: a display, and a controller configured to control presentation of a card element for a user interface of a first device.  MXIE includes displays, as well as controller hardware, software, and functionality and meets this element, including as further described and explained for the following claim elements.

b.    Claim 11 recites a controller configured to present a user interface for an application including a listing of other devices accessible to the first device, and wherein the user interface presents a device row for a selected other device, the device row displaying a plurality of device card elements associated with the selected other device, wherein the other devices are associated with a zone based on location and each other device transmits messages to indicate presence and to describe device abilities including exchange of device capabilities.  MXIE describes presenting application "card" elements and device listings through its Industrial Application Catalog and device management interface.[21]  Presenting these application and device cards satisfies this claim element at least because MXIE's platform is designed to visually identify, list, and assign/manage applications and digital entities (cards) associated with each device.

---

[21] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.

c.  Claim 11 recites a controller configured to detect a command for the user interface of the first device, wherein the command is associated with assigning a card element displayed by the user interface to the selected other device, wherein the command is an exchange of the card element for exchange of at least one of content and capabilities of the card element relative to the first device and the selected other device of the user interface, wherein the user interface and the card element are displayed by the first device and wherein operation of the first device for presentation of the user interface is based on a platform for operation with card elements and one or more entities, the one or more entities including the selected other device.  MXIE describes detecting administrative or automated assignment of applications to specific industrial devices via its device management portal and orchestrator.[22]  MXIE thus satisfies this claim element at least because MXIE's provisioning flows enable users or downstream automation to target and assign apps ("card elements") to connected assets.

d.  Claim 11 recites a controller configured to determine at least one capability of the selected other device based on the command and the platform for operation with the card element, wherein determining includes interoperation of the user interface with the platform, and wherein determining includes accessing entity information for the selected device based on a profile generated for the device within the platform for

---

[22] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.

operation with card elements and for self description of device capabilities, capability information for the card element and card metadata.  MXIE describes using its IDM module to onboard and profile device capability data and compatibility for specific device/application pairings.[23]  MXIE thus satisfies this claim element at least because IDM collects and exposes capability results as part of the card/app deployment and management process.  Further, MXIE describes storing, generating, and managing device profiles—including "self-description" attributes and structured metadata—in IDM and linking those to assigned apps/cards.[24]  MXIE thus satisfies this claim element further at least because MXIE's platform exposes such data as part of management and orchestration.

e.    Claim 11 recites a controller configured to control operation of the device based on said determining, where control includes controlling exchange of a card element relative to the first device and the selected other device. MXIE describes updating card/application assignments and metadata, and orchestrating card/app deployments to (and between) devices under management.[25]  MXIE thus satisfies this claim element at least because MXIE pushes configuration, application/image deployment, and related metadata update events to reflect each assignment.

f.    Claim 11 recites updating a card profile for the card element including updating card metadata stored by the platform for operation with card

---

[23] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

[24] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

[25] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/ and https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

elements to recognize assignment of the card element to the selected other device.  MXIE maintains assignment and status metadata for each application (card) and device in its device management platform, so that assignment actions immediately result in up-to-date "card" (app) profile updates and assignment recognition as required.[26]

60.    Thus, MXIE meets and infringes at least claim 11 of the '570 patent.

61.    In another example, another product, IDM, meets each element of claim 11 and infringes the claim.  For example:

    a.    Claim 11 recites a device comprising: a display, and a controller configured to control presentation of a card element for a user interface of a first device.  IDM includes displays, as well as controller hardware, software, and functionality and meets this element, including as further described and explained for the following claim elements.

    b.    Claim 11 recites a controller configured to configured to present a user interface for an application including a listing of other devices accessible to the first  device, and wherein the user interface presents a device row for a selected other device, the device row displaying a plurality of device card elements associated with the selected other device, wherein the other devices are associated with a zone based on location and each other device transmits messages to indicate presence and to describe device abilities including exchange of device capabilities.  IDM describes a centralized, web-based management interface that presents managed devices and

---

[26] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

deployable software/application items for those devices (functioning as "card elements" in the platform context).[27]  Presenting application/profile items alongside device entries in IDM satisfy this claim element at least because the interface displays selectable card-like application entities associated with devices in a management context as recited.

c.    Claim 11 recites a controller configured to detect a command for the user interface of the first device, wherein the command is associated with assigning a card element displayed by the user interface to the selected other device, wherein the command is an exchange of the card element for exchange of at least one of content and capabilities of the card element relative to the first device and the selected other device of the user interface, wherein the user interface and the card element are displayed by the first device and wherein operation of the first device for presentation of the user interface is based on a platform for operation with card elements and one or more entities, the one or more entities including the selected other device.  IDM describes UI-driven install/assign actions that associate an application or application profile to target devices or device groups through the device management console.[28]  These UI selection-and-apply operations satisfy this claim element at least because the platform records and executes the association of the chosen application/profile to the specified device(s) as the claim requires.

---

[27] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/ and https://www.dac.nokia.com/industrial-devices/device-software/.

[28] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/ and https://www.dac.nokia.com/industrial-devices/device-software/.

d.    Claim 11 recites a controller configured to determine at least one capability of the selected other device based on the command and the platform for operation with the card element, wherein determining includes interoperation of the user interface with the platform, and wherein determining includes accessing entity information for the selected device based on a profile generated for the device within the platform for operation with card elements and for self description of device capabilities, capability information for the card element and card metadata. IDM describes device inventory and state (OS, installed apps, compliance, attributes) together with application/profile definitions that reflect requirements and settings, enabling compatibility and capability-aware management.[29]  This capability and profile evaluation satisfies this claim element at least because IDM uses device-reported characteristics and application/profile metadata to decide feasible assignments and operations as recited.  Further, IDM describes storing device details and characteristics (entity information) and leveraging application/profile data (including version, configuration, and requirements) to drive device-specific actions.[30]  Accessing these device profiles and application/profile metadata satisfies this claim element at least because IDM reads device attributes and application/profile descriptors to govern assignments and operations.

[29] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/ and https://www.dac.nokia.com/industrial-devices/device-software/.

[30] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/ and https://www.dac.nokia.com/industrial-devices/device-software/.

e.    Claim 11 recites a controller configured to control operation of the device based on said determining, where control includes controlling exchange of a card element relative to the first device and the selected other device. IDM describes pushing installs/updates, enforcing policies, and executing management actions that create or remove app instances on devices (i.e., exchanging the application/profile instance to or from the device).[31]  This lifecycle control satisfies this claim element at least because IDM copies, updates, or removes application/profile instances and associated configuration on target devices based on the prior capability/profile determinations.

f.    Claim 11 recites updating a card profile for the card element including updating card metadata stored by the platform for operation with card elements to recognize assignment of the card element to the selected other device.  IDM describes maintaining assignment status, device–application relationships, and configuration/version metadata in its management backend so that each assignment immediately reflects in the managed records.[32]  IDM thus satisfies this claim element because updating these management records and application/profile state is descriptive of updating a card profile and card metadata to recognize assignment, as expressly required by the claim.

62.    Thus, IDM meets and infringes at least claim 11 of the '570 patent.

---

[31] See, e.g., https://www.dac.nokia.com/industrial-devices/device-software/ and https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

[32] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/ and https://www.dac.nokia.com/industrial-devices/device-software/.

63.    In yet another example, another product, DAC Manager, meets each element of claim 11 and infringes the claim.  For example:

a.    Claim 11 recites a device comprising: a display, and a controller configured to control presentation of a card element for a user interface of a first device.  DAC Manager includes displays, as well as controller hardware, software, and functionality and meets this element, including as further described and explained for the following claim elements.

b.    Claim 11 recites a controller configured to present a user interface for an application including a listing of other devices accessible to the first device, and wherein the user interface presents a device row for a selected other device, the device row displaying a plurality of device card elements associated with the selected other device, wherein the other devices are associated with a zone based on location and each other device transmits messages to indicate presence and to describe device abilities including exchange of device capabilities.  DAC Manager describes a cloud web GUI that presents managed network assets and lets operators "access our application catalog and deploy industrial applications directly onto the MX Industrial Edge."[33]  Presenting application catalog items and deployable services alongside managed assets satisfies this claim element at least because those selectable application entities function as the claimed card elements associated with devices in the management context.

---

[33] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

c.     Claim 11 recites a controller configured to detect a command for the user interface of the first device, wherein the command is associated with assigning a card element displayed by the user interface to the selected other device, wherein the command is an exchange of the card element for exchange of at least one of content and capabilities of the card element relative to the first device and the selected other device of the user interface, wherein the user interface and the card element are displayed by the first device and wherein operation of the first device for presentation of the user interface is based on a platform for operation with card elements and one or more entities, the one or more entities including the selected other device.  DAC Manager describes UI operations to "access our application catalog and deploy industrial applications directly onto the MX Industrial Edge," i.e., selecting an app and deploying/assigning it to target assets from the console.[34]  DAC Manager thus satisfies this claim element at least because the deployment action binds a chosen application (card element) to specific devices/sites within the DAC environment.

d.     Claim 11 recites a controller configured to determine at least one capability of the selected other device based on the command and the platform for operation with the card element, wherein determining includes interoperation of the user interface with the platform, and wherein determining includes accessing entity information for the selected device based on a profile generated for the device within the platform for

---

[34] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/.

operation with card elements and for self description of device

capabilities, capability information for the card element and card

metadata.  DAC Manager surfaces device/site health, alarms, KPIs, and

configuration state in the GUI and via APIs, and provides subscriber/SIM

and software management.[35]  DAC Manager thus satisfies this claim

element at least because using device reported KPIs/state and application

definitions to decide feasible deployment and operations is descriptive of

determining capability information and accessing entity/profile and card

metadata.  Further, DAC Manager's OSS exposes device attributes,

performance, alarms, and inventory through dashboards and APIs,

enabling capability aware operations and app deployment.[36]  DAC

Manager thus satisfies this claim element further because such leveraging

device reported telemetry (self description) together with application

catalog/profile data to guide assignments is indicative of the claim's

capability determination using profiles and card metadata.

e.      Claim 11 recites a controller configured to control operation of the device

based on said determining, where control includes controlling exchange of

a card element relative to the first device and the selected other device.

DAC Manager performs configuration management, subscriber

provisioning, and software management, and can deploy applications from

---

[35] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and the Nokia DAC brochure detailing integrated device management and asset dashboards at https://www.hannovermesse.de/apollo/hannover_messe_2021/obs/Binary/A1086077/Nokia_DAC_brochure_EN_20 21March.pdf.

[36] See, e.g., weblinks https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

the catalog to the MX Industrial Edge.[37]  Executing these deploy/push/update/remove actions satisfies this claim element at least because the platform copies/installs, updates, or removes the application instance on target devices based on the prior capability/profile evaluation.

f.    Claim 11 recites updating a card profile for the card element including updating card metadata stored by the platform for operation with card elements to recognize assignment of the card element to the selected other device.  DAC Manager maintains centralized inventories, alarms, KPIs, and software/assignment status in its OSS suite and Network Operations Dashboard, reflecting deployments and lifecycle changes in the management records.[38]  Persisting assignment state, KPIs, and software/version status thus satisfies this claim element.

64.    Thus, DAC Manager meets and infringes at least claim 11 of the '570 patent.

65.    Nokia without authority of Hisense or any license to the '570 patent makes, uses, offers to sell, or sells the Accused Products within the United States or imports the Accused Products into the United States.  This includes Nokia's manufacture and sale of MXIE that infringes at least claim 11 of the '570 patent.  Nokia therefore directly infringes the '570 patent under 35 U.S.C. § 271(a).

66.    Nokia enables and induces its customers in the United States to infringe one or more claims of the '570 patent by, for example, providing documentation, support services, and marketing materials to its United States customers which direct its customers to directly infringe

---

[37] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/.

[38] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

one or more claims of the '570 patent.  *See, e.g.*, "Nokia Accused Products" section, *supra*, citing Nokia documents and information available to customers and the public about the design and features of its products; https://www.dac.nokia.com/mx-industrial-edge/ (MX Industrial Edge webpage); https://www.dac.nokia.com/customer-hub/ (Customer Hub webpage, which includes "contact us" link  to "[g]et in touch with a Nokia expert").

67.     Nokia aids, instructs, supports, markets, and otherwise acts with specific intent to cause an end user located in the United States (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '570 patent.  Further, Nokia designs and manufactures the Accused Products with the specific intent for United States customers (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '570 patent.  Nokia has had knowledge of the '570 patent at least since October 13, 2025.

68.     Nokia sells and offers for sale the Accused Products in the United States with the knowledge and intent that its customers will use those products, including to infringe the '570 patent.  By selling and offering for sale the Accused Products in the United States, Nokia induces infringement of the '570 patent by at least its customers, which directly infringe the '570 patent when using the Accused Products in the United States.

69.     Nokia is liable for induced infringement of the '570 patent under 35 U.S.C. § 271(b) by intentionally taking action that has actually induced and continues to induce direct infringement of one or more claims of the '570 patent by others (such as its customers and consumers) using the Accused Products in this District, the state of Texas, and elsewhere in the United States.

70.     Nokia is liable for contributory infringement of the '570 patent under 35 U.S.C. § 271(c).  Nokia sells and offers to sell within the United States components of the

Accused Products that constitute material parts of the inventions claimed in the '570 patent. Nokia knows that these components are especially made or especially adapted for use in infringement of the '570 patent, and that they are not staple articles or commodities of commerce suitable for substantial non-infringing use. Accordingly, Nokia's supply of these components to customers in the U.S. contributes to direct infringement of the '570 patent by those customers, making Nokia liable under § 271(c).

71.    Hisense has complied with 35 U.S.C. § 287 and may recover pre-suit damages for Nokia's infringement of the '570 patent.

72.    Nokia's infringement of the '570 patent has caused and continues to cause damages and irreparable harm to Hisense, which has invested significantly in developing its products and services, and protecting its intellectual property including the '570 patent.

73.    Nokia's infringement of the '570 patent has been willful at least since the filing of the complaint.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,382,371

74.    Hisense realleges, and incorporates in full herein, each preceding paragraph.

75.    U.S. Patent No. 10,382,371, titled "System and methods for card interaction and assigning cards to devices," was duly and legally issued by the United States Patent and Trademark Office on August 13, 2019. A copy of the '371 patent is attached hereto as Exhibit C.

76.    Hisense is the assignee of all right, title, and interest in the '371 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '371 patent. Accordingly, Hisense possesses the exclusive right and has standing to prosecute the present action for Nokia's infringement of the '371 patent.

77.    The invention of the '371 patent relates to technology for assigning card elements of an application user interface to a device, enabling efficient and flexible interactions across real and virtual devices and spaces.

78.    As the '371 patent explains, the technology provides for presenting, by a device, a user interface including graphical elements for one or more card elements in a user row, and graphical elements for one or more devices in a device row, wherein cards are presented based on a space that the device is located.  The system can detect a user interface command to associate a selected card element with a selected device, wherein the user interface command includes selection and movement of a graphical element for the selected card from the user row to the device row associated with display of the selected space.  The technology may further detect a time limit for assignment such that the selected card is assigned to the selected device for a particular predetermined amount of time, and output a communication including an association of the selected card element with the selected device, wherein the association includes updating metadata stored by the application for the card element to recognize the assignment, wherein assignment of the card element is a copy of the selected card element to the selected device for the particular predetermined amount of time.

79.    The '371 patent provides a solution and improvement over the prior art whereby existing technologies were "limited in many ways," with "many conventional devices" that "are not interoperable with other devices or network services."  Connectivity and configuration burdens meant that "[m]any user devices must be configured to interact with one another," and prior protocols did "not allow for connectivity" across diverse systems.  The invention addresses these problems by supporting assignment and transfer of card elements between devices and spaces

(either "real or virtual") and allowing operation "across . . . multiple device types and across multiple device operating platforms" without requiring manual configuration.

80.    The invention of the '371 patent further provides that "assignment does not require configuration, downloading, decompressing, [or] other steps for the card to be usable once assigned. Rather, card assignment allows for the card element to appear within the user interface when the device to which the card is assigned is selected."  Metadata and assignment profiles are automatically managed, allowing seamless/dynamic transfer and association of functionality and data between application interfaces and devices.

81.    Without a license or permission from Hisense, Nokia has infringed and is continuing to infringe of the '371 patent, directly and indirectly, by importing, making, using, offering for sale, or selling the Accused Products, as well as by advertising, marketing, promoting, and supporting those products and inducing or contributing to infringement by its customers, in violation of 35 U.S.C. § 271.

82.    One or more of the Accused Products meets each element of at least claim 11 of the '371 patent, either literally or under the doctrine of equivalents.

83.    For example, MXIE meets each element and infringes:

   a.    Claim 11 recites a device comprising: a display configured to present a user interface. MXIE describes providing a dashboard and application management interface on connected terminals or web displays.[39]  MXIE's application portal satisfies this claim element at least because it renders the required user interface for industrial application and device management.

---

[39] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.

b.    Claim 11 recites a controller coupled to the display, configured to present a user interface, wherein the user interface is presented including graphical elements for one or more card elements in a user row, and wherein the user interface is presented including graphical elements for one or more devices in a device row, wherein cards are presented based on a space the device is located.  MXIE describes an application catalog that shows application cards (representing deployable apps/services) and associated devices, organized by industrial zones or spaces.[40]  MXIE thus satisfies this claim element at least because MXIE's UI allows applications (cards) to be visualized and assigned to devices in different industrial contexts or locations.

c.    Claim 11 recites a controller configured to detect a user interface command to associate a selected card element presented by the user interface with a selected device presented by the user interface, the selected device in proximity to the device and the selected device associated with the space, wherein the user interface command includes selection and movement of a graphical element for the selected card from the user row of the user interface to the device row associated with display of the selected space.  MXIE describes allowing users to select and assign applications from the catalog to specific devices by graphical action (drag-and-drop or click-to-assign) in the UI.[41]  This matches the claim at least

---

[40] See, e.g., https://www.dac.nokia.com/applications/ and https://www.dac.nokia.com/mx-industrial-edge/.

[41] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/ and https://www.dac.nokia.com/applications/.

because MXIE enables logical "movement" (workflow, association, interaction) of application cards to devices in designated spaces.

d.   Claim 11 recites a controller configured to detect a time limit for assignment of the selected card element to the selected device, such that the selected card is assigned to the selected device for a particular predetermined amount of time.  MXIE describes features for managed deployments including application license lifecycle and the option for time-limited assignment or trial deployments.[42]  MXIE thus satisfies the claimed time element at least because MXIE's management platform supports and enforces time-based controls over deployed applications.

e.   Claim 11 recites a controller configured to output a communication including an association of the selected card element with the selected device, wherein the association of the selected card with the selected device includes updating metadata stored by the application for the card element to recognize the assignment of the card element to the selected device, wherein the communication includes an updated card profile for the selected card element to the selected device based on the assignment, and wherein assignment of the card element is a copy of the selected card element to the selected device for the particular predetermined amount of time.  MXIE describes pushing deployment and assignment data to devices, updating profiles and metadata in the management backend for each app-device pairing, and creating individually tracked instances of

---

[42] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.

each application on target devices for the duration of the assignment.[43] MXIE thus satisfies this claim element at least because MXIE's platform tracks each assignment as a unique application instance, manages metadata, and communicates assignment and lifecycle changes between the catalog and device(s).

84.    Thus, MXIE meets and infringes at least claim 11 of the '371 patent.

85.    In another example, another product, IDM, meets each element of claim 11 and infringes the claim.  For example:

a.    Claim 11 recites a device comprising: a display configured to present a user interface.  IDM describes a centralized web-based device management interface and dashboards for onboarding, configuration, monitoring, and application distribution.[44]  IDM thus satisfies the claimed display/user interface at least because IDM renders the management user interface on a display for interacting with industrial devices and their software payloads.

b.    Claim 11 recites a controller coupled to the display, configured to present a user interface, wherein the user interface is presented including graphical elements for one or more card elements in a user row, and wherein the user interface is presented including graphical elements for one or more devices in a device row, wherein cards are presented based on a space the device is located.  IDM describes listing applications/profiles and devices

---

[43] See, e.g., https://www.dac.nokia.com/applications/ and https://www.dac.nokia.com/mx-industrial-edge/.

[44] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/, and https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/.

in the interface, supporting grouping by locations/areas and roles for contextual management.[45]  IDM thus satisfies this claim element at least because IDM presents selectable application items (application profiles/packages) and device entries organized by location ("spaces"), corresponding to card elements and devices displayed by space in the claimed interface.

c.    Claim 11 recites a controller configured to detect a user interface command to associate a selected card element presented by the user interface with a selected device presented by the user interface, the selected device in proximity to the device and the selected device associated with the space, wherein the user interface command includes selection and movement of a graphical element for the selected card from the user row of the user interface to the device row associated with display of the selected space.  IDM describes selecting an application or application profile in the UI and performing install actions to targeted devices or groups defined by location/area, effectuating association via UI selection within the management console.[46]  IDM thus satisfies the claimed association at least because the UI selection is indicative of moving a card to a device row in a selected space by establishing the app-to-device assignment within the location context.

---

[45] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/, and https://www.dac.nokia.com/industrial-devices/device-software/.

[46] See, e.g.,  https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/, and https://www.dac.nokia.com/industrial-devices/device-software/.

    d.    Claim 11 recites a controller configured to detect a time limit for assignment of the selected card element to the selected device, such that the selected card is assigned to the selected device for a particular predetermined amount of time.  IDM describes policy-driven application lifecycle management, including installing and uninstalling applications and managing versions and compliance across device groups, enabling administrators to constrain assignments to defined durations via policy or scheduled removal.[47]  IDM thus satisfies this claim element at least because policy-controlled lifecycle and scheduled uninstall provide assignment for a defined period followed by removal.

    e.    Claim 11 recites a controller configured to output a communication including an association of the selected card element with the selected device, wherein the association of the selected card with the selected device includes updating metadata stored by the application for the card element to recognize the assignment of the card element to the selected device, wherein the communication includes an updated card profile for the selected card element to the selected device based on the assignment, and wherein assignment of the card element is a copy of the selected card element to the selected device for the particular predetermined amount of time.  IDM describes pushing application packages/configurations to target devices, updating device and application records in the management backend, and installing application instances on devices with central

---

[47] See, e.g.,  https://www.dac.nokia.com/industrial-devices/device-software/, and
https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

visibility of deployment status and attributes.[48]  IDM thus satisfies this
claim element at least because each deployment communicates the
association, updates managed metadata/state, delivers the applicable
profile/configuration, and results in a device-local instance (copy) that
operates for the managed assignment period.

86.    Thus, IDM meets and infringes at least claim 11 of the '371 patent.

87.    In yet another example, DAC Manager meets each element of claim 11 and
infringes.

a.    Claim 11 recites a device comprising: a display configured to present a
user interface. DAC Manager describes a centralized, web-based
management user interface for provisioning, configuration, monitoring,
and operations in the DAC environment.[49]  DAC Manager thus satisfies
this claim element at least because DAC Manager renders the required
management user interface on a display for operator interaction with
managed assets.

b.    Claim 11 recites a controller coupled to the display, configured to present
a user interface, wherein the user interface is presented including graphical
elements for one or more card elements in a user row, and wherein the
user interface is presented including graphical elements for one or more
devices in a device row, wherein cards are presented based on a space the
device is located.  DAC Manager describes organizing resources by

---

[48] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/, and
https://www.dac.nokia.com/industrial-devices/device-software/.

[49] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and
https://www.dac.nokia.com/.

sites/campuses and groups, listing devices and service/application items in site contexts for contextual management.[50]  DAC Manager thus satisfies the claimed presentation at least because DAC Manager displays selectable service/application items alongside device lists scoped to specific sites ("spaces"), corresponding to the claimed card elements and devices by space.

c.      Claim 11 recites a controller configured to detect a user interface command to associate a selected card element presented by the user interface with a selected device presented by the user interface, the selected device in proximity to the device and the selected device associated with the space, wherein the user interface command includes selection and movement of a graphical element for the selected card from the user row of the user interface to the device row associated with display of the selected space.  DAC Manager describes UI operations to provision, enable, and push configurations/services to selected devices or device groups within a chosen site context.[51]  DAC Manager thus satisfies the claimed association at least because the UI selection and apply/push actions are indicative of moving a card to a device row in a displayed space by establishing the item-to-device association within the selected site.

---

[50] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

[51] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

d.      Claim 11 recites a controller configured to detect a time limit for assignment of the selected card element to the selected device, such that the selected card is assigned to the selected device for a particular predetermined amount of time.  DAC Manager describes lifecycle and policy-based management of services/configurations across devices and groups, enabling scheduled enable/disable or policy-driven removal/changes.[52]  DAC Manager satisfies this claim element at least because policy/schedule controls achieve the same function (bounded assignment duration) and result (automatic removal/change after the period).

e.      Claim 11 recites a controller configured to output a communication including an association of the selected card element with the selected device, wherein the association of the selected card with the selected device includes updating metadata stored by the application for the card element to recognize the assignment of the card element to the selected device, wherein the communication includes an updated card profile for the selected card element to the selected device based on the assignment, and wherein assignment of the card element is a copy of the selected card element to the selected device for the particular predetermined amount of time.  DAC Manager describes pushing services/configurations to devices, maintaining device/service state and inventory, and creating on-device instances/configurations with central visibility of deployment status and

_____

[52] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

attributes.[53]  DAC Manager satisfies this claim element at least because each push communicates the association, updates managed records/metadata, delivers the profile/configuration to the device, and results in a device-local instance (copy) governed by lifecycle/policy duration.

88.    Thus, DAC Manager meets and infringes at least claim 11 of the '371 patent.

89.    Nokia without authority of Hisense or any license to the '371 patent makes, uses, offers to sell, or sells the Accused Products within the United States or imports the Accused Products into the United States.  This includes Nokia's manufacture and sale of MXIE that infringes at least claim 11 of the '371 patent.  Nokia therefore directly infringes the '371 patent under 35 U.S.C. § 271(a).

90.    Nokia enables and induces its customers in the United States to infringe one or more claims of the '371 patent by, for example, providing documentation, support services, and marketing materials to its United States customers which direct its customers to directly infringe one or more claims of the '371 patent.  *See, e.g.*, "Nokia Accused Products" section, *supra*, citing Nokia documents and information available to customers and the public about the design and features of its products; https://www.dac.nokia.com/mx-industrial-edge/ (MX Industrial Edge webpage); https://www.dac.nokia.com/customer-hub/ (Customer Hub webpage, which includes "contact us" link  to "[g]et in touch with a Nokia expert").

91.    Nokia aids, instructs, supports, markets, and otherwise acts with specific intent to cause an end user located in the United States (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '371 patent.  Further, Nokia

---

[53] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/.

designs and manufactures the Accused Products with the specific intent for United States customers (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '371 patent.  Nokia has had knowledge of the '371 patent at least since October 13, 2025.

92.    Nokia sells and offers for sale the Accused Products in the United States with the knowledge and intent that its customers will use those products, including to infringe the '371 patent.  By selling and offering for sale the Accused Products in the United States, Nokia induces infringement of the '371 patent by at least its customers, which directly infringe the '371 patent when using the Accused Products in the United States.

93.    Nokia is liable for induced infringement of the '371 patent under 35 U.S.C. § 271(b) by intentionally taking action that has actually induced and continues to induce direct infringement of one or more claims of the '371 patent by others (such as its customers and consumers) using the Accused Products in this District, the state of Texas, and elsewhere in the United States.

94.    Nokia is liable for contributory infringement of the '371 patent under 35 U.S.C. § 271(c).  Nokia sells and offers to sell within the United States components of the Accused Products that constitute material parts of the inventions claimed in the '371 patent.  Nokia knows that these components are especially made or especially adapted for use in infringement of the '371 patent, and that they are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Accordingly, Nokia's supply of these components to customers in the U.S. contributes to direct infringement of the '371 patent by those customers, making Nokia liable under § 271(c).

95.    Hisense has complied with 35 U.S.C. § 287 and may recover pre-suit damages for Nokia's infringement of the '371 patent.

96.     Nokia's infringement of the '371 patent has caused and continues to cause damages and irreparable harm to Hisense, which has invested significantly in developing its products and services, and protecting its intellectual property including the '371 patent.

97.     Nokia's infringement of the '371 patent has been willful at least since the filing of the complaint.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 10,044,649

98.     Hisense realleges, and incorporates in full herein, each preceding paragraph.

99.     U.S. Patent No. 10,044,649, titled "Systems and methods for connect to control," was duly and legally issued by the United States Patent and Trademark Office on August 7, 2018. A copy of the '649 patent is attached hereto as Exhibit D.

100.    Hisense is the assignee of all right, title, and interest in the '649 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '649 patent.  Accordingly, Hisense possesses the exclusive right and has standing to prosecute the present action for Nokia's infringement of the '649 patent.

101.    The invention of the '649 patent describes a technology for connection and control of devices, where an application executed by a device uses a discovery engine, a pairing engine, and a capabilities engine to obtain profile and capabilities information and then formats device specific control commands using plugin information.

102.    As the '649 patent explains, the application transmits a discover message via a discovery engine, receives a response, requests a profile and receives an acknowledgement with identification and profile information, requests capabilities and receives a capabilities acknowledgement, and then transmits a control command formatted by the application based on the profile, capabilities, and at least one plugin. The specification also describes establishing a

communication channel between devices and sequencing discovery, pairing, capabilities exchange, and control in the controller of the device.

103.    The '649 patent provides a solution and improvement over the prior art whereby heterogeneous devices can be discovered and paired dynamically without bespoke integrations because devices provide profile and capabilities data to the application, which uses plugin information to format correct control commands for each device.  This approach reduces preconfiguration complexity and improves interoperability by standardizing discovery, profile/capability exchange, and command formatting across different device types.

104.    The invention of the '649 patent further provides that device functionality and control points can be represented as card elements with metadata, allowing applications to access, associate, and operate functions of a second system after assembling a complete card element from basic and associated data.  The patent describes this discover --> profile --> capabilities --> control flow implemented by a controller with engines for discovery, pairing, and capabilities, and with control commands formatted based on profile, capabilities, and at least one plugin.

105.    Without a license or permission from Hisense, Nokia has infringed and is continuing to infringe of the '649 patent, directly and indirectly, by importing, making, using, offering for sale, or selling the Accused Products, as well as by advertising, marketing, promoting, and supporting those products and inducing or contributing to infringement by its customers, in violation of 35 U.S.C. § 271.

106.    One or more of the Accused Products meets each element of at least claim 11 of the '649  patent, either literally or under the doctrine of equivalents.

107.    For example, MXIE meets each element of claim 11 of the '649 patent and infringes.  For example:

a.  Claim 11 recites a device comprising: an input/output unit configured for communication, and a controller coupled to the input/output unit, wherein the controller is configured to control transmitting a discover message, wherein transmission of the discover message is controlled by a discovery engine of an application executed by the device.  MXIE describes hosting Industrial Application Catalog apps, including Nokia Integrated Operations Center (IOC), which provides an integration broker and rule engine to connect devices, applications, and systems, thereby initiating discovery/onboarding of assets.[54]  MXIE thus meets this element and describes a discovery engine transmitting a discover message because MXIE hosted applications like IOC execute discovery and connection workflows to identify devices/systems for subsequent control within the MXIE runtime.

b.  Claim 11 recites a controller configured to control receiving a response message from a second device in response to the discover message.  MXIE's integration flow is bi directional, with IOC designed to ingest device identity, status, and data streams after connection is initiated so assets appear in MXIE dashboards and automations.[55]  MXIE satisfies this claim element at least because the MXIE hosted application completes discovery handshakes that return device identity/state to the application executing on MXIE.

---

[54] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/ and https://www.dac.nokia.com/applications/nokia-integrated-operations-center/.

[55] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/ and https://www.dac.nokia.com/applications/nokia-integrated-operations-center/.

    c.    Claim 11 recites a controller configured to control transmitting a request to the second device for a profile associated with the second device, wherein transmission of the request for the profile is controlled by a pairing engine of the application.  MXIE details IT/OT integration to normalize device information and map assets via application specific connectors and orchestration, which encompasses requesting and ingesting device identifiers/attributes used to associate devices with app policies and configurations.[56]  MXIE thus satisfies this claim element at least because MXIE applications query and retrieve device metadata during pairing/onboarding to bind devices to configurations in the MXIE environment.

    d.    Claim 11 recites a controller configured to control receiving an acknowledgement of the request for profile, wherein the acknowledgement of the request for profile includes identification of the second device and profile information for the second device.  The IOC application on MXIE surfaces asset identity, context, alarms, and KPIs after integration, evidencing successful retrieval and association of device identity/metadata to the onboarded device.[57]  MXIE thus satisfies this claim element because the MXIE hosted application persists and displays device identity and associated metadata following pairing.

---

[56] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/it-integration/.

[57] See, e.g., https://www.dac.nokia.com/applications/nokia-integrated-operations-center/.

      e.      Claim 11 recites a controller configured to control transmitting a request for capabilities associated with the second device, wherein transmission of the request is controlled by a capabilities engine of the application. MXIE's IT/OT integration and IOC's rule engine interrogate device interfaces and data points through industrial connectors to obtain features/functions needed for operation and automation.[58]  MXIE thus satisfies this claim element because MXIE hosted apps leverage connectors and rules to obtain supported functions, measurements, and controls for capability aware operation.

      f.      Claim 11 recites a controller configured to control receiving acknowledgement of the request for capabilities, wherein the acknowledgement of the request for capabilities includes one or more capabilities for the second device.  MXIE applications visualize and utilize returned device attributes/KPIs in IOC dashboards and workflows, indicating that the application has acquired and stored the device's capabilities/points for operational use.[59]  MXIE thus satisfies receiving capability acknowledgements because the MXIE hosted application persists and exposes the specific capabilities/features obtained from each integrated device.

      g.      Claim 11 recites a controller configured to control transmitting a control command to the second device, wherein the control command is formatted

---

[58] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/it-integration/ and https://www.dac.nokia.com/applications/nokia-integrated-operations-center/.

[59] See, e.g., https://www.dac.nokia.com/applications/nokia-integrated-operations-center/.

by the application based on the acknowledgement of the request for

profile, the acknowledgement of the request for capabilities received by

the device and at least one plugin of the second device.  MXIE uses

industrial connectors/adapters and app specific integrations from the

Industrial Application Catalog to send control operations and deployments

to devices and systems, with those connectors acting as device specific

plugins that format commands according to each device's interface and

capabilities.[60]  MXIE thus satisfies formatting and transmitting commands

based on profile/capabilities/plugins because MXIE hosted apps apply

device metadata and capability knowledge together with connector/plugin

interfaces to issue protocol appropriate control messages to each device.

108.    Thus, MXIE meets and infringes at least claim 11 of the '649 patent.

109.    In another example, IDM meets and infringes at least claim 11 of the '649 patent.

For example:

a.    Claim 11 recites a device comprising: an input/output unit configured for

communication, and a controller coupled to the input/output unit, wherein

the controller is configured to control transmitting a discover message,

wherein transmission of the discover message is controlled by a discovery

engine of an application executed by the device.  IDM describes

enrollment/onboarding workflows that initiate device registration and

management association so devices are discovered into inventory and

---

[60] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/, https://www.dac.nokia.com/applications/, and https://www.dac.nokia.com/connectivity-solutions/private-wireless/it-integration/.

come under control via the IDM service.[61]  IDM thus meets this element and includes a discovery engine transmitting a discover message because IDM's enrollment flows trigger initial device–platform contact and discovery into the management domain to enable subsequent profile/capability exchanges.

b.    Claim 11 recites a controller configured to control receiving a response message from a second device in response to the discover message.  IDM shows devices returning identity and state into the centralized inventory during onboarding and periodic check ins, reflecting a response/handshake that carries device details back to the controller.[62]  IDM thus satisfies this claim element because IDM captures device identity/health as part of the enrollment handshake and ongoing device–manager communications.

c.    Claim 11 recites a controller configured to control transmitting a request to the second device for a profile associated with the second device, wherein transmission of the request for the profile is controlled by a pairing engine of the application.  IDM details device onboarding that retrieves device identifiers/attributes and associates devices to policies/profiles and groups for management.[63]  IDM thus satisfies this claim element because IDM obtains and applies device profile data (identity, role/group, policy context) to bind the device into configuration and lifecycle control.

---

[61] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

[62] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

[63] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

d.    Claim 11 recites a controller configured to control receiving an acknowledgement of the request for profile, wherein the acknowledgement of the request for profile includes identification of the second device and profile information for the second device.  IDM maintains and displays device identity, inventory, and assigned policies/configurations in the console after onboarding, evidencing receipt and storage of the device profile data.[64]  IDM thus satisfies this claim element because IDM persists the device's identity and associated profile information and exposes it for management actions.

e.    Claim 11 recites a controller configured to control transmitting a request for capabilities associated with the second device, wherein transmission of the request is controlled by a capabilities engine of the application.  IDM indicates it collects device attributes/state (e.g., software versions, installed apps, compliance status) to drive policy and deployment decisions.[65]  IDM thus satisfies this claim element because IDM queries/ingests device characteristics so the platform knows what functions, software, and settings are supported for each device.

f.    Claim 11 recites a controller configured to control receiving acknowledgement of the request for capabilities, wherein the acknowledgement of the request for capabilities includes one or more capabilities for the second device.  IDM shows those device capabilities/attributes in its inventory and health views (e.g., OS level,

---

[64] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

[65] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

installed software, configuration compliance), which reflects that capability data has been received and stored.[66]  IDM thus satisfies this claim element because IDM records and presents the specific device capabilities needed to govern allowed operations and deployments.

g.    Claim 11 recites a controller configured to control transmitting a control command to the second device, wherein the control command is formatted by the application based on the acknowledgement of the request for profile, the acknowledgement of the request for capabilities received by the device and at least one plugin of the second device.  IDM supports pushing configurations, application/software payloads, and policy updates to targeted devices or groups, which the platform formats per device type/role and current capabilities/versions for correct execution on the endpoint.[67]  IDM thus satisfies this claim element because IDM uses device profile and capability data to deliver the appropriate install/update/control operations over device specific management agents/interfaces (the functional equivalent of "plugins") for that device class.

110.   Thus, IDM meets and infringes at least claim 11 of the '649 patent.

111.   In yet another example, DAC Manager meets and infringes at least claim 11 of the '649 patent.  For example:

a.    Claim 11 recites a device comprising: an input/output unit configured for communication, and a controller coupled to the input/output unit, wherein

---

[66] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

[67] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

the controller is configured to control transmitting a discover message, wherein transmission of the discover message is controlled by a discovery engine of an application executed by the device.  DAC Manager describes centralized site and asset operations that initiate onboarding and discovery of network elements and subscribers/SIMs through its "single pane" OSS console.[68]  DAC Manager thus meets this element, including because DAC Manager's OSS initiates network element and subscriber discovery/registration workflows to bring devices under management for subsequent control.

b.      Claim 11 recites a controller configured to control receiving a response message from a second device in response to the discover message.  DAC Manager shows device/subscriber registrations, alarms, and KPIs appearing in its dashboards after onboarding and attach, evidencing bi directional handshakes that return identity and status to the controller.[69] DAC Manager thus satisfies this claim element because DAC Manager captures device/subscriber identity and state as part of attach/onboarding exchanges and displays them for operations.

c.      Claim 11 recites a controller configured to control transmitting a request to the second device for a profile associated with the second device, wherein transmission of the request for the profile is controlled by a

---

[68] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.hannovermesse.de/apollo/hannover_messe_2021/obs/Binary/A1086077/Nokia_DAC_brochure_EN_2021March.pdf.

[69] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

pairing engine of the application.  DAC Manager describes subscriber/SIM provisioning, device grouping, and policy/QoS association that retrieve and apply subscriber/device profile data during enrollment and assignment.[70]  DAC Manager thus satisfies this claim element because DAC Manager queries and binds devices/subscribers to profiles (identifiers, policies, roles) to pair them with the managed network configuration.

d.      Claim 11 recites a controller configured to control receiving an acknowledgement of the request for profile, wherein the acknowledgement of the request for profile includes identification of the second device and profile information for the second device.  DAC Manager maintains and presents device/subscriber identity, site membership, and assigned policies in its inventory and dashboards after provisioning.[71]  DAC Manager thus satisfies this claim element because the console reflects stored device/subscriber identity and associated profile data that were returned and applied during pairing.

e.      Claim 11 recites a controller configured to control transmitting a request for capabilities associated with the second device, wherein transmission of the request is controlled by a capabilities engine of the application.  DAC Manager exposes device/site health, KPIs, and network attributes (e.g.,

---

[70] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

[71] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.hannovermesse.de/apollo/hannover_messe_2021/obs/Binary/A1086077/Nokia_DAC_brochure_EN_2021March.pdf.

radio parameters, subscriber class) and manages service/QoS policies, which entails interrogating device/network capability data for operations.[72]  DAC Manager thus satisfies this claim element because DAC Manager queries and uses device/network capability attributes to determine permissible service levels and actions.

f.    Claim 11 recites a controller configured to control receiving acknowledgement of the request for capabilities, wherein the acknowledgement of the request for capabilities includes one or more capabilities for the second device.  DAC Manager's dashboards display returned KPIs, alarms, and status for devices/subscribers/sites, indicating the platform has acquired and stored the capabilities/state for operational decision making.[73]  DAC Manager thus satisfies this claim element because the management view persists and presents the device/network capabilities that were reported back during interrogation.

g.    Claim 11 recites a controller configured to control transmitting a control command to the second device, wherein the control command is formatted by the application based on the acknowledgement of the request for profile, the acknowledgement of the request for capabilities received by the device and at least one plugin of the second device.  DAC Manager supports configuration pushes, subscriber/SIM activation and policies,

---

[72] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.dac.nokia.com/connectivity-solutions/private-wireless/.

[73] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/ and https://www.hannovermesse.de/apollo/hannover_messe_2021/obs/Binary/A1086077/Nokia_DAC_brochure_EN_2021March.pdf.

QoS/slicing settings, and application catalog access for MXIE

deployments, all delivered via standardized management/control interfaces

for each asset type.[74]  DAC Manager thus satisfies this claim element

because DAC Manager uses device/subscriber profiles and capability data,

together with device specific control interfaces (the functional equivalent

of "plugins"), to push the correctly formatted configuration and policy

commands to each managed endpoint.

112.    Thus, DAC Manager meets and infringes at least claim 11 of the '649  patent.

113.    Nokia without authority of Hisense or any license to the '649 patent makes, uses,

offers to sell, or sells the Accused Products within the United States or imports the Accused

Products into the United States.  This includes Nokia's manufacture and sale of MXIE, IDM, and

DAC Manager that infringes at least claim 11 of the '649 patent.  Nokia therefore directly infringes

the '649 patent under 35 U.S.C. § 271(a).

114.    Nokia enables and induces its customers in the United States to infringe one or

more claims of the '649 patent by, for example, providing documentation, support services, and

marketing materials to its United States customers which direct its customers to directly infringe

one or more claims of the '649 patent.  *See, e.g.*, "Nokia Accused Products" section, *supra*, citing

Nokia documents and information available to customers and the public about the design and

features of its products; https://www.dac.nokia.com/mx-industrial-edge/ (MX Industrial Edge

webpage); https://www.dac.nokia.com/customer-hub/ (Customer Hub webpage, which includes

"contact us" link  to "[g]et in touch with a Nokia expert").

---

[74] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/, https://www.dac.nokia.com/connectivity-solutions/private-wireless/, and https://www.hannovermesse.de/apollo/hannover_messe_2021/obs/Binary/A1086077/Nokia_DAC_brochure_EN_2021March.pdf.

115.    Nokia aids, instructs, supports, markets, and otherwise acts with specific intent to cause an end user located in the United States (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '649 patent.  Further, Nokia designs and manufactures the Accused Products with the specific intent for United States customers (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '649 patent.  Nokia has had knowledge of the '649 patent at least since October 13, 2025.

116.    Nokia sells and offers for sale the Accused Products in the United States with the knowledge and intent that its customers will use those products, including to infringe the '649 patent.  By selling and offering for sale the Accused Products in the United States, Nokia induces infringement of the '649 patent by at least its customers, which directly infringe the '649 patent when using the Accused Products in the United States.

117.    Nokia is liable for induced infringement of the '649 patent under 35 U.S.C. § 271(b) by intentionally taking action that has actually induced and continues to induce direct infringement of one or more claims of the '649 patent by others (such as its customers and consumers) using the Accused Products in this District, the state of Texas, and elsewhere in the United States.

118.    Nokia is liable for contributory infringement of the '649 patent under 35 U.S.C. § 271(c).  Nokia sells and offers to sell within the United States components of the Accused Products that constitute material parts of the inventions claimed in the '649 patent.  Nokia knows that these components are especially made or especially adapted for use in infringement of the '649 patent, and that they are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Accordingly, Nokia's supply of these components to customers in

the U.S. contributes to direct infringement of the '649 patent by those customers, making Nokia liable under § 271(c).

119.    Hisense has complied with 35 U.S.C. § 287 and may recover pre-suit damages for Nokia's infringement of the '649 patent.

120.    Nokia's infringement of the '649 patent has caused and continues to cause damages and irreparable harm to Hisense, which has invested significantly in developing its products and services, and protecting its intellectual property including the '649 patent.

121.    Nokia's infringement of the '649 patent has been willful at least since the filing of the complaint.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,601,744

122.    Hisense realleges, and incorporates in full herein, each preceding paragraph.

123.    U.S. Patent No. 10,601,744, titled "System and methods for presentation of a user interface and card elements," ("the '744 patent") was duly and legally issued by the United States Patent and Trademark Office on March 24, 2020.  A copy of the '744 patent is attached hereto as Exhibit E.

124.    Hisense is the assignee of all right, title, and interest in the '744 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '744 patent.  Accordingly, Hisense possesses the exclusive right and has standing to prosecute the present action for Nokia's infringement of the '744 patent.

125.    The invention of the '744 patent discloses systems, methods, and devices for presenting and managing "card" elements within an application user interface by preloading a cross-platform framework file and dynamically importing card content. The '744 patent discloses a framework for applications—particularly mobile or cross-platform applications—that display

modular "cards," each representing a piece of content or a functional component (for example, a media item, service control, or device capability).

126.    As the '744 patent explains, the disclosed system allows a device to: detect when a user selects a graphical element (e.g., a card); load or preload a framework file that defines how the card's content will be displayed and interacted with; dynamically present or update the card's content within the user interface; and coordinate this presentation across multiple devices, applications, or "spaces" within an ecosystem.

127.    The '744 patent describes improvements over prior user-interface and device-interaction systems that struggled with slow performance, limited interoperability, and cumbersome configurations. The '744 patent discloses an architecture that supports preloading and dynamic importing of card content to reduce latency, enable smooth transitions between cards, and allow interoperability between devices and platforms.

128.    Without a license or permission from Hisense, Nokia has infringed and is continuing to infringe of the '744 patent, directly and indirectly, by importing, making, using, offering for sale, or selling the Accused Products, as well as by advertising, marketing, promoting, and supporting those products and inducing or contributing to infringement by its customers, in violation of 35 U.S.C. § 271.

129.    One or more of the Accused Products meets each element of at least claim 18 of the '744 patent, either literally or under the doctrine of equivalents.  For example:

  a.    Claim 18 recites a device comprising: a display configured for presentation of a user interface and a controller coupled to the display configured to present a user interface configured to present a graphical user interface for display on the device including graphical elements for

one or more card elements, the one or more card elements including a first graphical element and a second graphical element.  MXIE is an on-premises edge platform delivered as an integrated solution that runs and manages applications and services administered via a management/UI portal.  MXIE operates a centralized management server that operates with industrial applications for networked industrial devices.  These devices include graphical user interface(s) for display of graphical elements for one or more card elements.  MXIE describes presenting application "card" elements and device listings through its Industrial Application Catalog and device management interface.[75]  MXIE further describes an application catalog environment for deploying and managing multiple applications, including third-party applications, that feature selectable UI tiles or widgets functioning as graphical elements.  MXIE uses industrial devices with displays and presents its Industrial Application Catalog with graphical application elements.[76]

---

[75] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.

[76] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.





---

[77] See, e.g., https://www.nokia.com/asset/212765/.

[78] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.



b.      Claim 18 recites a controller configured to detect selection of the first graphical element presented by a user interface. MXIE's system uses a centralized management server that operates with industrial application for networked devices, which include user interfaces through which users can interact with applications. DAC Manager also describes UI operations to access our application catalog and deploy industrial applications directly onto the MX Industrial Edge, i.e., selecting an app and deploying/assigning it to target assets from the console.[80] DAC Manager thus includes a user interface through which a user can interact with applications represented by graphical elements and which can detect the selections of graphical elements presented by a user.

c.      Claim 18 recites a controller configured to load a framework file for presentation of content associated with the first graphical element, wherein

---

[79] See, e.g., https://www.dac.nokia.com/industrial-devices/nokia-industrial-device-management/.

[80] See, e.g., https://www.dac.nokia.com/connectivity-solutions/private-wireless/nokia-dac-manager/.

the first graphical element is associated with a card element configured to be presented based on the framework file and card content for the first graphical element, and wherein the device loads card content for the first graphical element with the framework file, wherein the framework file is configured to load content associated with presentation of card elements within the user interface.  MXIE is configured to work with applications such as Nokia industrial device management for IOT devices, having a user interface that permits a user to control the directives that are sent to the device upon connection, or send new configuration settings or manage over the air device upgrades.  The application's user interface displays IOT devices and permits the user to select a device model to view its details.  MXIE is described as using a cloud-native, containerized microservices edge platform, offering quick deployment of applications via "click-to-deploy" catalog, implying a runtime framework that loads modules (apps) and displays their UI content.  The portal and runtime environment acts as a framework loading the selected module or app content.  MXIE thus loads framework files for industrial application presentation.[81]

d.     Claim 18 recites a controller configured to display content associated with the first graphical element using the framework file, wherein presentation of the first graphical element includes using an interface layer of the first card element to define an image and description for the first card element,

---

[81] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.

and a metadata layer including card content for the card element.  MXIE is configured to work with applications, such as Nokia's industrial device management for IOT devices, having a user interface that permits a user to control the directives that are sent to the device upon connection, or send new configuration settings or manage over the air device upgrades.  The application's user interface displays IOT devices and permits the user to select a device model to view its details.  By selecting a graphical representation of a device utilizing the user interface, the device displays content associated with a first graphical element.  Moreover, the presentation of graphical elements in MXIE and its applications, such as Nokia's industrial device management for IOT devices, includes using an interface layer of the first card element to define an image and description for the first card element, and a metadata layer including card content for the card element.  These interface layers include a metadata layer that includes card content for the card element, enabling the display of the graphical and descriptive content.  MXIE thus : presents applications based on framework and application content, uses interface layers to define application presentation, and manages metadata for application elements and deployment.[82]

e.    Claim 18 recites a controller configured to detect selection of second graphical element presented by the user interface, wherein the second graphical element is associated with a second card element.  MXIE is

---

[82] See, e.g., https://www.dac.nokia.com/mx-industrial-edge/.

configured to work with applications, such as Nokia industrial device
management for IOT devices, having a user interface that permits a user to
control the directives that are sent to the device upon connection, or send
new configuration settings or manage over the air device upgrades.  The
application's user interface displays IOT devices and permits the user to
select a device model to view its details.  As such, the devices of the
MXIE running the Nokia industrial device management for IOT devices
application can detect selection of a second graphical element, which is
associated with a second card element.

f.    Claim 18 recites a controller configured to import elements of the second
graphical element for the user interface in response to the selection of the
second graphical element, wherein importing includes injecting content of
the second graphical element into the framework file loaded for
presentation of the first graphical element and importing is based on card
element needs of the second graphical element.  MXIE system is
configured to work with applications, such as Nokia industrial device
management for IOT devices, having a user interface that permits a user to
control the directives that are sent to the device upon connection, or send
new configuration settings or manage over the air device upgrades.  The
UI/runtime environment of MXIE supports modular loading of new app
modules without full reload, and loading modules dynamically.  MXIE
may thus inject application content into existing framework to avoid
reloading.

g.    Claim 18 recites a controller configured to present card content for the second graphical element based on the framework file and the importing, wherein the device loads card content for the second graphical element into the framework file already loaded for presentation of the user interface and updates card content not in the framework file and the device prevents reloading of the framework file. MXIE reflects an application catalog with click-to-deploy industrial applications and tiles in the portal to select applications for deployment and management. MXIE is configured to work with applications, such as Nokia industrial device management for IOT devices, having a user interface that permits a user to control the directives that are sent to the device upon connection, or send new configuration settings or manage over the air device upgrades. The UI/runtime environment of MXIE supports modular loading of new app modules without full reload, and loading modules dynamically. MXIE may thus present application content based on framework files and the importing.

130.    Thus MXIE meets and infringes at least claim 18 of the '744 patent.

131.    Nokia without authority of Hisense or any license to the '744 patent makes, uses, offers to sell, or sells the Accused Products within the United States or imports the Accused Products into the United States. This includes Nokia's manufacture and sale of MXIE that infringes at least claim 18 of the '744 patent. Nokia therefore directly infringes the '744 patent under 35 U.S.C. § 271(a).

132.    Nokia enables and induces its customers in the United States to infringe one or more claims of the '744 patent by, for example, providing documentation, support services, and marketing materials to its United States customers which direct its customers to directly infringe one or more claims of the '744 patent. *See, e.g.*, "Nokia Accused Products" section, *supra*, citing Nokia documents and information available to customers and the public about the design and features of its products; https://www.dac.nokia.com/mx-industrial-edge/ (MX Industrial Edge webpage); https://www.dac.nokia.com/customer-hub/ (Customer Hub webpage, which includes "contact us" link  to "[g]et in touch with a Nokia expert").

133.    Nokia aids, instructs, supports, markets, and otherwise acts with specific intent to cause an end user located in the United States (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '744 patent.  Further, Nokia designs and manufactures the Accused Products with the specific intent for United States customers (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '744 patent.  Nokia has had knowledge of the '744 patent at least since October 13, 2025.

134.    Nokia sells and offers for sale the Accused Products in the United States with the knowledge and intent that its customers will use those products, including to infringe the '744 patent.  By selling and offering for sale the Accused Products in the United States, Nokia induces infringement of the '744 patent by at least its customers, which directly infringe the '744 patent when using the Accused Products in the United States.

135.    Nokia is liable for induced infringement of the '744 patent under 35 U.S.C. § 271(b) by intentionally taking action that has actually induced and continues to induce direct infringement

of one or more claims of the '744 patent by others (such as its customers and consumers) using the Accused Products in this District, the state of Texas, and elsewhere in the United States.

136.    Nokia is liable for contributory infringement of the '744 patent under 35 U.S.C. 271(c).  Nokia sells and offers to sell within the United States components of the Accused Products that constitute material parts of the inventions claimed in the '744 patent.  Nokia knows that these components are especially made or especially adapted for use in infringement of the '744 patent, and that they are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Accordingly, Nokia's supply of these components to customers in the U.S. contributes to direct infringement of the '744 patent by those customers, making Nokia liable under § 271(c).

137.    Hisense has complied with 35 U.S.C. § 287 and may recover pre-suit damages for Nokia's infringement of the '744 patent.

138.    Nokia's infringement of the '744 patent has caused and continues to cause damages and irreparable harm to Hisense, which has invested significantly in developing its products and services, and protecting its intellectual property including the '744 patent.

139.    Nokia's infringement of the '744 patent has been willful at least since the filing of the complaint.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,848,885

140.    Hisense realleges, and incorporates in full herein, each preceding paragraph.

141.    U.S. Patent No. 8,848,885, titled "Device Information Communication Method, Video Display Device, And Video Display System," was duly and legally issued by the United States Patent and Trademark Office on September 30, 2014.  A copy of the '885 patent is attached hereto as Exhibit F.

142.    Hisense is the assignee of all right, title, and interest in the '885 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '885 patent.  Accordingly, Hisense possesses the exclusive right and has standing to prosecute the present action for Nokia's infringement of the '885 patent.

143.    The invention of the '885 patent discloses systems, methods, and devices for communicating device information of connected devices during calls by obtaining device information, controlling incoming and outgoing calls, and sending device information to a communication partner.  The '885 patent discloses a framework for ensuring that a communication partner receives the requisite information of a device connected to a call, including in the context of assessing whether connected devices on a call are in a suitable environment for disclosure of confidential information.

144.    As the '885 patent explains, there has been increasingly widespread use of terminals such as broadcast receivers having call functionality wherein the call functionality enables a broadcast receiver to make a call to another broadcast receiver, mobile terminal, information processor, or the like.  The '885 patent explains that with this conventional technology, it is difficult for a user to determine whether the other side of a call is in a suitable environment.  As such, a third party may listen or view the communication depending on the type of output device.  The '885 patent further contemplates device information as potentially including, for example, identification information, setting information, presence of a camera or speaker, or online status.

145.    The '885 patent describes improvements over conventional use of broadcast receivers having call functionality by providing communication information to a communication partner to allow a determination as to whether a particular call environment is suitable.

146.    The invention of the '885 patent provides for systems, devices, methods that are configured to obtain device information of a device connected to a video display device, control an outgoing or incoming call to a communication partner, and send the device information to the communication partner.  For example, the '885 patent contemplates controlling an outgoing or incoming call from a communication partner and when making the call to the communication partner, sending the communication partner the device information of the connected device, such as the ID and setting information of the device.

147.    Without a license or permission from Hisense, Nokia has infringed and is continuing to infringe of the '885 patent, directly and indirectly, by importing, making, using, offering for sale, or selling the Accused Products, as well as by advertising, marketing, promoting, and supporting those products and inducing or contributing to infringement by its customers, in violation of 35 U.S.C. § 271.

148.    One or more of the Accused Products meets each element of at least claim 7 of the '885 patent, either literally or under the doctrine of equivalents.  For example, Team Comms meets each element and infringes.

149.    For example, Team Comms meets and infringes at least claim 7 of the '885 patent. For example:

    a.    Claim 7 recites a video display device comprising:.  Team Comms "delivers business-critical push-to-talk voice, video and data communications allowing teams to collaborate on one-to-one and group calls, both indoors and outdoors, across any industrial campus – including mines, ports and factories, without needing access to the internet" and

utilizes "any Android 11+ device."[83]  Team Comms includes a "Dispatch Console" which provides a video display device, including because the Dispatch Console permits a dispatcher to "view user calls in ambient mode."[84]  Team Comms thus satisfies this element at least because it includes a video display device, including the Dispatch Console.

b.    Claim 7 recites an obtaining module configured to obtain device information on a device being connected to the video display device. Team Comms obtains device information from a device connected to the video display device because the Dispatch Console permits the user to "seamlessly coordinate activity across all users, monitor discussions, and join ongoing calls."[85]  The Dispatch Console further allows a user to see which device users are online and determine the position of the device user utilizing geo-location data.[86]  Team Comms also includes "geofencing capabilities that allow dispatchers to geofence hazardous areas and receive alerts when lone workers or teams are in that vicinity. Device sensory capabilities will also be implemented to alert dispatchers of no movement within the device that suggests a man down incident."[87] Team Comms satisfies this element at least because it and the Dispatch

---

[83] See, e.g., https://www.youtube.com/watch?v=dQXEYDnmpak.

[84] See, e.g., https://www.nokia.com/blog/boost-your-campus-communications-with-nokia-team-comms/; see also https://www.youtube.com/watch?v=TjO6xNQ7aEM& (discussing the Dispatch Console and providing an image of the Dispatch Console as a video display).

[85] See, e.g., https://www.youtube.com/watch?v=TjO6xNQ7aEM&.

[86] See, e.g.,  https://www.nokia.com/blog/boost-your-campus-communications-with-nokia-team-comms/; https://www.nokia.com/blog/enhance-worker-safety-and-productivity-at-the-touch-of-a-button/.

[87] See, e.g., https://www.nokia.com/blog/enhance-worker-safety-and-productivity-at-the-touch-of-a-button/.

Console obtain device information, including online status, geo-location information, device ID, or other device settings from a device connected to it and the Dispatch Console.

c.  Claim 7 recites a communication controller configured to control an outgoing call to a communication partner and an incoming call from the communication partner, and to send the device information to the communication partner.  Team Comms is configured to control outgoing and incoming calls with a communication partner and send the device information to the communication partner because Team Comms the Dispatch Console permits a user to "seamlessly coordinate activity across all users, monitor discussions, and join ongoing calls."[88]  The Dispatch Console displays information about "ongoing calls" and "discussions" from connected devices and coordinates activity across users.[89] Furthermore, the Dispatch Console and Team Comms sends device information, including online status, geo-location, or other device settings, to a communication partner.[90]  Team Comms thus satisfies this element.

150.    Thus, Team Comms meets and infringes at least claim 7 of the '885 patent.

151.    Nokia without authority of Hisense or any license to the '885 patent makes, uses, offers to sell, or sells the Accused Products within the United States or imports the Accused Products into the United States.  This includes Nokia's manufacture and sale of Team Comms that

---

[88] See, e.g., https://www.youtube.com/watch?v=TjO6xNQ7aEM&.

[89] See, e.g., https://www.youtube.com/watch?v=TjO6xNQ7aEM&.

[90] See, e.g., https://www.nokia.com/blog/boost-your-campus-communications-with-nokia-team-comms/; https://www.nokia.com/blog/enhance-worker-safety-and-productivity-at-the-touch-of-a-button/.

infringes at least claim 7 of the '885 patent.  Nokia therefore directly infringes the '885 patent under 35 U.S.C. § 271(a).

152.    Nokia enables and induces its customers in the United States to infringe one or more claims of the '885 patent by, for example, providing documentation, support services, and marketing materials to its United States customers which direct its customers to directly infringe one or more claims of the '885 patent.  *See, e.g.*, "Nokia Accused Products" section, *supra*, citing Nokia documents and information available to customers and the public about the design and features of its products; https://www.dac.nokia.com/mx-industrial-edge/ (MX Industrial Edge webpage); https://www.dac.nokia.com/customer-hub/ (Customer Hub webpage, which includes "contact us" link  to "[g]et in touch with a Nokia expert").

153.    Nokia aids, instructs, supports, markets, and otherwise acts with specific intent to cause an end user located in the United States (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '885 patent.  Further, Nokia designs and manufactures the Accused Products with the specific intent for United States customers (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '885 patent.  Nokia has had knowledge of the '885 patent at least since October 13, 2025.

154.    Nokia sells and offers for sale the Accused Products in the United States with the knowledge and intent that its customers will use those products, including to infringe the '885 patent.  By selling and offering for sale the Accused Products in the United States, Nokia induces infringement of the '885 patent by at least its customers, which directly infringe the '885 patent when using the Accused Products in the United States.

155.    Nokia is liable for induced infringement of the '885 patent under 35 U.S.C. § 271(b) by intentionally taking action that has actually induced and continues to induce direct infringement of one or more claims of the '885 patent by others (such as its customers and consumers) using the Accused Products in this District, the state of Texas, and elsewhere in the United States.

156.    Nokia is liable for contributory infringement of the '885 patent under 35 U.S.C. § 271(c).  Nokia sells and offers to sell within the United States components of the Accused Products that constitute material parts of the inventions claimed in the '885 patent.  Nokia knows that these components are especially made or especially adapted for use in infringement of the '885 patent, and that they are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Accordingly, Nokia's supply of these components to customers in the U.S. contributes to direct infringement of the '885 patent by those customers, making Nokia liable under § 271(c).

157.    Hisense has complied with 35 U.S.C. § 287 and may recover pre-suit damages for Nokia's infringement of the '885 patent.

158.    Nokia's infringement of the '885 patent has caused and continues to cause damages and irreparable harm to Hisense, which has invested significantly in developing its products and services, and protecting its intellectual property including the '885 patent.

159.    Nokia's infringement of the '885 patent has been willful at least since the filing of the complaint.

### COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 10,121,516

160.    Hisense realleges, and incorporates in full herein, each preceding paragraph.

161.    U.S. Patent No. 10,121,516, titled "Data Monitoring and Management Device and Event Data Monitoring Method," was duly and legally issued by the United States Patent and Trademark Office on November 6, 2018.  A copy of the '516 patent is attached hereto as Exhibit G.

162.    Hisense is the assignee of all right, title, and interest in the '516 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '516 patent.  Accordingly, Hisense possesses the exclusive right and has standing to prosecute the present action for Nokia's infringement of the '516 patent.

163.    The invention of the '516 patent enables integrated monitoring and management of event-related data from multiple sensors in an event-driven manner.  The invention of the '516 patent is a singular device capable of automatically controlling sensors to capture data when certain events are detected, record the relevant event data, and present filtered event-specific information for display to users.  This allows for more timely and focused responses to critical events, as users do not need to manually sift through continuous feeds to locate the relevant events.

164.    As the '516 patent explains, the device's system controller includes an instruction unit that records in a recording medium both "event-related data," such as the time and subject of the recording, and the corresponding sensor monitoring data from when the event occurs.  The controller also includes a display data output unit with an event-filtering function that plays the event record together with a thumbnail of the corresponding monitoring data.  Upon further user specification, the display data output unit plays the full stream of monitoring data for that event.  *See* Fig. 3.



F I G. 3

165.    The '516 patent provides a solution and improvement over the prior art whereby the system links event metadata to precise storage addresses for the underlying audio or video files so the UI can instantly render event-based previews and jump to full playback.  Fig. 10. Furthermore, the system of the '516 patent filters and arrays events by category and in combination to further narrow the review set for the user.  Figs. 6A, 6B.  The system also captures pre-event and post-event data to further build to give additional temporal context to the event.  It does this by caching monitoring data from before the event time through after the event.

166.    The invention of the '516 patent further provides that the UI can display event occurrence times with representative thumbnails on a temporal axis and allow swiping to earlier and later events.  *See* Figs. 5A, 6B, 8A.  The playback control unit supports continuous playback, fast-forward, reverse, and frame-advance, including sequences across multiple events.  Fig. 3.

167.    Without a license or permission from Hisense, Nokia has infringed and is continuing to infringe of the '516 patent, directly and indirectly, by importing, making, using,

offering for sale, or selling the Accused Products, as well as by advertising, marketing, promoting, and supporting those products and inducing or contributing to infringement by its customers, in violation of 35 U.S.C. § 271.

168.    One or more of the Accused Products meets each element of at least claim 1 of the '516 patent, either literally or under the doctrine of equivalents.  For example:

    a.    Claim 1 recites a data monitoring and management device comprising:. MXIE runs Nokia Scene Analytics, which monitors multiple video feeds from cameras connected over a private wireless network for various industrial use cases, including manufacturing quality control, security, port container identification.  If anomalies or specified objects or situations are detected, the system sends alerts to human operators to investigate.  MXIE also supports a Visual Position and Object Detection ("VPOD") application, which provides a real-time tracking and positioning solution that is tag-less and leverages existing camera systems.[91]  Accordingly, MXIE is a data monitoring and management device as claimed, capable of monitoring sensor data and managing that data in response to detected events.

    b.    Claim 1 recites a network interface to obtain event-related data when at least a sensor detects an event being received as input.  Nokia's MXIE includes interfaces that enable connectivity via LTE/5G and Wi-Fi for connected sensors.[92]  In operation, when an event occurs as detected by a

---

[91] https://www.dac.nokia.com/applications/visual-position-and-object-detection/.

[92] https://www.nokia.com/private-networks/digital-automation-for-industrial-campus/mxie-on-premises-ot-edge-explained/.

sensor, such as a "fallen worker," event-related data, such as relevant portions of video, are transmitted over the network for processing by MXIE. MXIE can be used with a variety of sensors to detect such events.[93] For example, the image below is a screenshot depicting "Nokia Scene Analytics for railways" in which cameras or other sensors are deployed in a railway setting and a system automatically alerts approaches trains of unusual activities, or events.[94] Accordingly, MXIE has a network interface that obtains event-related data from sensors upon detection of events, satisfying this claim element.



c.    Claim 1 recites a data management unit to (i) control at least an operation of a camera and an operation of a microphone and (ii) send one or both of first monitoring data from the camera and second monitoring data from the microphone to a recording unit. MXIE, through its Scene Analytics

---

[93] https://www.dac.nokia.com/mx-industrial-edge/.

[94] https://youtu.be/b5m5x4r_vkk.

and VPOD applications, interacts with and controls connected cameras in order to facilitate monitoring.[95]  For example, MXIE's Scene Analytics application interfaces with on-site cameras to receive their live video feeds.[96]  Likewise, the VPOD application works with existing cameras to carry out tracking and detection tasks.[97]  Further, the MXIE data management functionality sends or stores the sensor monitoring data as required.  For example, the Scene Analytics app receives the camera's video feed data for analysis, and the VPOD system similarly receives the camera feed data for preprocessing.  Relevant portions of this monitoring data, i.e., first and second monitoring data, from cameras and microphones are then sent to storage or forwarded within the system.  *Id*.  MXIE's applications manage the collection of camera/microphone data and ensure that the pertinent video and audio is transmitted to the recording unit, thereby practicing claimed data management unit.[98,99]

d.    Claim 1 recites a system controller controlling the data management unit, wherein the system controller includes an instruction unit to record, in the recording unit, the event-related data of when the event is detected and the one or both of the first monitoring data and the second monitoring data of when the event occurs.  MXIE platform implements this functionality by

---

[95] https://www.dac.nokia.com/applications/visual-position-and-object-detection/

[96] https://www.nokia.com/industries/public-safety/emergency-communications-services/cctv-networking-and-scene-analytics-solution/.

[97] https://www.dac.nokia.com/applications/visual-position-and-object-detection/.

[98] https://www.nokia.com/private-networks/digital-automation-for-industrial-campus/mxie-on-premises-ot-edge-explained/.

[99] https://www.dac.nokia.com/industry/industrial-ai/.

automatically recording and associating event-specific data when events are detected.  Nokia's Scene Analytics will detect when certain anomalies or specified objects or events occur in the video feeds, and in response it generates an alert for human investigation.  For example, the figure below depicts the use of MXIE to log "events," such as "forklifts have breached the perimeter."[100]



MXIE identifies the occurrence of an event and isolates the relevant data, effectively recording or flagging that event-related data for review.  Scene Analytics is described as determining when an anomaly is detected and sending an alert, meaning that the event and its timestamp have been captured and logged.[101]  Nokia's Scene Analytics webpage states that "[t]he ultra-reliable stream of data coming from thousands of cameras and other sensors becomes useful information for command-and-control center operators."  *Id.*  Similarly, the VPOD application is capable of detecting

---

[100] https://web-assets.nokia.com/haip_v2/security-safety.html.

[101] https://www.nokia.com/industries/public-safety/emergency-communications-services/cctv-networking-and-scene-analytics-solution/.

specific event conditions and would likewise identify and log the pertinent event data. Nokia describes its VPOD as "a solution that uses video-based tracking and does not require tags and can leverage existing camera systems. [Nokia's] Worker Safety Solution can detect anything on site that it has been trained to without being intrusive. It uses the information provided by VPOD, applies the specified rules to defined situations and acts accordingly."[102] In both cases, the MXIE system controller instructs that the event-related data and the corresponding sensor monitoring data be recorded in the system's recording repository. Thus, MXIE contains an instruction unit as claimed, which records the event trigger information along with the relevant portions of camera or microphone data from the time for the event.

e.    Claim 1 recites a system controller controlling the data management unit, wherein system controller includes a display data output unit including an event filtering function that receives the event-related data from the recording unit, the display data output unit plays the event-related data as display data, wherein a part of at least one of the first and second monitoring data corresponding to the event-related data. MXIE filters and presents recorded event information, including portions of the underlying sensor data, to users. Nokia's Scene Analytics is configured to send an alert to humans when an anomaly or specified object is detected. In practice, this means that once an event is recorded, the system delivers a

---

[102] https://www.dac.nokia.com/applications/visual-position-and-object-detection/.

94

notification or visual indication to the user that highlights the event. The notification or visual indication includes a snippet of the video or an image that corresponds to the detected event. This "event filtering function" ensures that only the relevant segment of data related to the event is presented, rather than requiring the user to view hours of footage. Likewise, Nokia's VPOD application pre-processes video feeds such that "only relevant data is shared with the app running on MXIE to update the real time environment model."[103] This confirms that the system filters incoming sensor data and transmits only the event-specific or relevant portions for use by the application and for display or alert purposes. When an event, such as a safety incident, is detected, MXIE's display output module retrieves the stored event data, including the corresponding video snippet or other sensor data, from the recording unit and presents it to the user. It thereby plays back the event-related recorded data and includes portions of the original sensor feed tied to that event.

169.    Thus, MXIE meets and infringes at least claim 1 of the '516 patent.

170.    Nokia without authority of Hisense or any license to the '516 patent makes, uses, offers to sell, or sells the Accused Products within the United States or imports the Accused Products into the United States. This includes Nokia's manufacture and sale of MXIE that infringes at least claim 1 of the '516 patent. Nokia therefore directly infringes the '516 patent under 35 U.S.C. § 271(a).

---

[103] https://www.dac.nokia.com/applications/visual-position-and-object-detection/.

171.    Nokia enables and induces its customers in the United States to infringe one or more claims of the '516 patent by, for example, providing documentation, support services, and marketing materials to its United States customers which direct its customers to directly infringe one or more claims of the '516 patent. *See, e.g.*, "Nokia Accused Products" section, *supra*, citing Nokia documents and information available to customers and the public about the design and features of its products; https://www.dac.nokia.com/mx-industrial-edge/ (MX Industrial Edge webpage); https://www.dac.nokia.com/customer-hub/ (Customer Hub webpage, which includes "contact us" link  to "[g]et in touch with a Nokia expert").

172.    Nokia aids, instructs, supports, markets, and otherwise acts with specific intent to cause an end user located in the United States (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '516 patent.  Further, Nokia designs and manufactures the Accused Products with the specific intent for United States customers (including in Texas and this District) to use the Accused Products in a manner that infringes one or more claims of the '516 patent.  Nokia has had knowledge of the '516 patent at least since October 13, 2025.

173.    Nokia sells and offers for sale the Accused Products in the United States with the knowledge and intent that its customers will use those products, including to infringe the '516 patent.  By selling and offering for sale the Accused Products in the United States, Nokia induces infringement of the '516 patent by at least its customers, which directly infringe the '516 patent when using the Accused Products in the United States.

174.    Nokia is liable for induced infringement of the '516 patent under 35 U.S.C. § 271(b) by intentionally taking action that has actually induced and continues to induce direct infringement

of one or more claims of the '516 patent by others (such as its customers and consumers) using the Accused Products in this District, the state of Texas, and elsewhere in the United States.

175.    Nokia is liable for contributory infringement of the '516 patent under 35 U.S.C. § 271(c).  Nokia sells and offers to sell within the United States components of the Accused Products that constitute material parts of the inventions claimed in the '516 patent.  Nokia knows that these components are especially made or especially adapted for use in infringement of the '516 patent, and that they are not staple articles or commodities of commerce suitable for substantial non-infringing use.  Accordingly, Nokia's supply of these components to customers in the U.S. contributes to direct infringement of the '516 patent by those customers, making Nokia liable under § 271(c).

176.    Hisense has complied with 35 U.S.C. § 287 and may recover pre-suit damages for Nokia's infringement of the '516 patent.

177.    Nokia's infringement of the '516 patent has caused and continues to cause damages and irreparable harm to Hisense, which has invested significantly in developing its products and services, and protecting its intellectual property including the '516 patent.

178.    Nokia's infringement of the '516 patent has been willful at least since the filing of the complaint.

## PRAYER FOR RELIEF

WHEREFORE, Hisense respectfully prays that the Court enter judgment in its favor and award the following relief against Nokia:

179.    Enter a judgment in favor of Hisense that Nokia has infringed the Asserted Patents;

180.    Preliminarily and permanently enjoin Nokia, and its officers, directors, employees, agents, licensees, representatives, affiliates, related companies, servants, successors and assigns,

and any and all persons acting in privity or in concert with any of them, from further infringing the Asserted Patents;

181.    Award Hisense damages adequate to compensate for infringement by Nokia, pursuant to 35 U.S.C. § 284, in an amount to be determined at trial, as a result of its infringement of the Asserted Patents;

182.    Find Nokia's infringement willful and award enhanced damages pursuant to 35 U.S.C. § 284.

183.    Award Hisense pre- and post-judgment interest on all damages awarded, as well as supplemental damages;

184.    Find this to be an exceptional case and award Hisense its costs and attorneys' fees under 35 U.S.C. § 285;

185.    Award and grant Hisense such other and further relief as the Court deems just and proper under the circumstances.

## JURY DEMAND

Hisense demands a jury trial on all matters triable by a jury.

Dated: October 31, 2025

Respectfully submitted,

*/s/ Keith B. Davis*

Keith B. Davis (State Bar No. 24037895)
Lead Attorney
JONES DAY
2727 N. Harwood St., Suite 500
Dallas, TX 75201
Telephone:  (214) 220-3939
Email:  kbdavis@jonesday.com

Michael C. Hendershot
JONES DAY
1755 Embarcadero Rd
Palo Alto, CA  94303
Telephone:  (650) 739-3939
Email: mhendershot@jonesday.com

David M. Airan
Pei Chen
Christopher J. Gass
James W. Sanner
LEYDIG, VOIT & MAYER, LTD.
180 N. Stetson Ave., Ste. 4900
Chicago, IL 60601
Telephone:  (312) 616-5600
Email:  dairan@leydig.com
Email:  rchen@leydig.com
Email:  cgass@leydig.com
Email:  jsanner@leydig.com

*Counsel For Plaintiff*
*Hisense Visual Technology Co., Ltd.*